### SALTER v. WILLIAMS et al.

##### (District Court, D. New Jersey.   October 21, 1914.)

BANKS AND BANKING &#9901;&#61;248—LIABILITY OF STOCKHOLDERS—RESCISSION OF PURCHASE OF STOCK.

Under Rev. St. § 5151, providing that shareholders of every national banking association shall be individually responsible for all contracts of the association to the extent of their stock, in addition to the amount invested therein, upon the failure of a national bank, the rights of creditors attach, and a purchaser of stock who has held it for several months, and made no complaint until after the appointment of a receiver, cannot thereafter, as against creditors, have the purchase rescinded because of false representations by the bank's president as to the solvency of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. &#9901;&#61;248.]

In Equity. Suit by William D. Salter against Christopher L. Williams, receiver, and another. Application for injunction denied, and complaint dismissed.

Plaintiff sets up that the First National Bank of Bayonne was duly organized in 1906, with a capitalization of $100,000, divided into 1,000 shares of stock, of the par value of $100 each; that on December 6, 1913, the bank became insolvent, and that defendant is the duly qualified receiver; that about April 4, 1913, the bank, by its president, offered to sell to the plaintiff 30 shares of the capital stock of the bank for $6,000, and then and there falsely and fraudulently represented to plaintiff that the bank was solvent and had a large surplus; that its shares were worth over $200 each; that plaintiff believed such representations, and was induced thereby to buy from the bank 30 shares of its stock, for which he paid to the bank $500 in cash and made and delivered to the bank his promissory note for $5,500, and thereafter, when the note became due, made payments on account of it until he had paid in all $1,600 in cash and owed a balance of $4,400, for which the bank held plaintiff's promissory note, dated November 10, 1913, payable one month after date; that upon April 4, 1913, the bank was not solvent, but was hopelessly insolvent, and that its stock was worthless, all of which was known to the president, and that prior to April 4, 1913, the Comptroller of the Currency of the United States had notified the president and officers of the bank that the bank was carrying much worthless paper and that certain securities must be charged off and replaced, but that the officers and directors failed to comply with the direction of the Comptroller; that the president of the bank made false representations, knowing them to be false, with intent to induce plaintiff to buy stock and thereby to defraud him; that in the report of the receiver to the Comptroller for the quarter ending June 30, 1914, it appears that of the alleged assets of the bank $334,263.38 are worthless, and $398,910.15 are doubtful, making a total of $733,173.53, and that nearly all of the assets were of little or no value about April 4, 1913, and at least $300,000 worth of the assets were worthless on that date; that plaintiff made demands upon the receiver to be allowed to examine the books of the bank, for the purpose of obtaining the names of the debtors and the exact amounts of the debts due, but that the receiver has refused to comply with the demands; that plaintiff did not know of the fraud perpetrated until

the Comptroller closed the bank, and that thereupon plaintiff repudiated and rescinded, and hereby does repudiate and rescind, the purchase and ownership of the stock, and has tendered and does hereby tender a return thereof, and of the dividends received by him.

Plaintiff then sets up that the Union Trust Company of New Jersey, a solvent banking corporation, offered to take over the business and assets of the defunct bank, and to pay the depositors in full upon certain terms, but that after several months of negotiation the proposition failed, and that another institution made an effort to purchase, which included the paying of the depositors 75 per cent. of their claims, and perhaps more, but that negotiations were unsuccessful; that, if either of these offers had been carried out, plaintiff would not have been liable to an assessment upon his stock. Plaintiff sets up the demand of the Comptroller of the Currency under the Revised Statutes of the United States and the National Banking Act, the institution of a suit to recover $3,000, the assessment upon the 30 shares of stock owned by the plaintiff, together with interest, and that in an action at law plaintiff could have no relief. Wherefore he prays that the action at law to recover the assessment be enjoined, and that an action begun by the receiver against plaintiff for $4,400 upon the promissory note referred to, which action is now pending and undetermined in the District Court of the United States for the District of New Jersey be restrained and enjoined, and that the sale of the 30 shares of stock be rescinded, and that the $1,600 paid to the defendant bank be returned.

Defendant, as receiver of the bank, and the bank, move to dismiss the complaint for lack of equity.

Aaron A. Melniker, of Jersey City, N. J., for complainant.

George M. Burditt and Barber, Watson & Gibboney, all of New York City, for receiver.

HUNT, Circuit Judge (after stating the facts as above). The case is disposed of by the application of the views of the Supreme Court of the United States in Scott v. Deweese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 822. There the court referred to the liability of a shareholder in a national bank under section 5151 of the Revised Statutes, and, after discussing the inability of the shareholder to escape from the liabilities after he has claimed and been accorded by the bank the rights of a shareholder, said that it might be that a suit would lie, if brought before the suspension of the bank, for the purpose of canceling a subscriber's subscription, but that immediately upon the failure of the bank the rights of creditors attached under section 5151, and that a shareholder who was such when the failure occurred could not escape the individual liability prescribed by this section, upon the ground that the bank had issued to him a certificate of stock before, strictly speaking, it had authority to do so. Again the court said:

"If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position."

The allegations in the present complaint do not withdraw plaintiff's position from the pertinency of these rules. On the contrary, plaintiff avers that he was a purchaser, that he held for several months,

that he was a shareholder at the time of the insolvency of the bank, and that he never made any complaint until after the appointment of a receiver. The rights of the creditors, however, intervened when the bank suspended, and it is now too late for him to come into court and claim to be relieved upon the ground of misrepresentation and deceit by any person who was an officer of the bank at the time of the purchase of his shares. In Scott v. Abbott, 160 Fed. 573, 87 C. C. A. 475, the Circuit Court of Appeals for the Eighth Circuit stated this general rule:

"That when one has for a considerable period of time prior to the failure of a corporation occupied the position of one of its stockholders, and exercised and enjoyed the rights, privileges, and fruits of that relation, including the chance of enhanced value of his holdings, when fortune frowns, and the chances turn against him, it is too late to assert, as against creditors of the corporation, the right to rescind his contract of stock subscription on the ground of false representations after a state of insolvency has supervened, and after proceedings to wind up the corporation for the benefit of creditors have been or are about to be instituted." Hood v. Wallace, 97 Fed. 983, 38 C. C. A. 692, affirmed in 182 U. S. 555, 21 Sup. Ct. 885, 45 L. Ed. 1227.

For lack of equity, the complaint is dismissed, and the plaintiff's application for injunction is denied.