## CAWTHON v. BANCOKENTUCKY CO.

District Court, W. D. Kentucky.
April 18, 1931.

Steinfeld & Steinfeld, of Louisville, Ky., for petitioner.

David R. Castleman and Selligman, Selligman & Goldsmith, all of Louisville, Ky., for respondent.

DAWSON, District Judge.

This case is pending before me on motion to dismiss the petition.

The petitioner claims that in the year 1929, through the false and fraudulent representations of the respondent company and its officers and representatives, she was induced to subscribe and pay for fifty-six shares of the capital stock of the respondent company; the total consideration paid being $1,400. The allegations as to false and fraudulent representations are very imperfectly and inartificially pleaded. In substance the petitioner claims that it was represented to her that the respondent, at the time she was induced to purchase her stock, was solvent and was in the hands of competent management, and that, relying upon such statements, she purchased her stock and paid $1,400 therefor; that said representations that the respondent was solvent and under competent management were false and untrue, and known by the officers of the respondent to be false and untrue at the time such representations and statements were made by them. She claims that she did not discover that said representations and statements were false until about the 17th day of November, 1930, and that she thereupon demanded a rescission of her contract of purchase of said stock and a return to her of the $1,400 paid therefor, and that the officers and agents in charge of the respondent company accepted her offer of rescission and agreed and promised to forthwith return to her the purchase price paid by her for the stock.

These statements are the basis of the claim she asserts and upon which she seeks to

have the respondent adjudged a bankrupt, it being alleged in her petition that the respondent has less than twelve creditors. The specific act of bankruptcy alleged is the appointment of a receiver for the respondent company by the Jefferson circuit court on the 24th day of November, 1930, at a time when the respondent was insolvent.

It is extremely doubtful if the alleged representation that the corporation was under competent management can be treated in this case as anything more than an expression of opinion; but inasmuch as the petition alleges that it was also represented that the corporation was solvent at the time the petitioner purchased her stock, I shall proceed on the theory that the petition, in that respect at least, makes a good allegation of false representation.

Several reasons are advanced by the respondent in support of its motion to dismiss, but they may be summarized under two general heads: (1) That the petitioner's claim is one sounding purely in tort, and is therefore not a provable claim under the Bankruptcy Act; and (2) that the petition upon its face shows that it was not filed until February 10, 1931, nearly three months after the appointment of a receiver for the respondent, and that a stockholder cannot rescind his contract of purchase of stock after insolvency or bankruptcy of the corporation. These objections will be dealt with in the order stated.

 The respondent admits that the fact that the petitioner's claim is an unliquidated one is not fatal to her right to maintain the petition if she has a provable claim. Indeed, this question is thoroughly settled by the Supreme Court in the case of Grant Shoe Co. v. Laird Co., 212 U. S. 445, 29 S. Ct. 332, 53 L. Ed. 591. It is earnestly insisted, however, that petitioner's claim is one arising purely ex delicto. If such be the case, petitioner has no provable claim in bankruptcy. Schall v. Camors, 251 U. S. 239, 40 S. Ct. 135, 64 L. Ed. 247. The petitioner meets this contention by the allegation in her petition that the tort was merged in the alleged express agreement on the part of the respondent to take back the stock and refund her money paid therefor. This suggestion of the petitioner is met, however, by the contention that the agreement to refund the petitioner her money was an agreement of the respondent to purchase its own stock, and therefore illegal. The respondent is a Delaware corporation, and I understand it to be admitted that the laws of Delaware prohibit a corporation from purchasing its own stock. The petition,

however, does not present a case for the application of this statutory rule. Accepting the allegations of the petition as true—as I must for the purposes of this motion—the agreement relied upon by the petitioner was not one to purchase its own stock, in violation of law, but was an agreement recognizing that there had never been a valid sale of the stock to the petitioner, because of the fraud practiced in its sale, and a recognition by respondent of its obligation to return to the petitioner the money paid for it. By such an agreement the respondent was simply doing that which a court of equity would have compelled it to do in a proper suit, had the charge of fraudulent representation been sustained. As a matter of fact, the agreement alleged in the petition adds nothing to the strength of the petitioner's claim. Such an agreement is valid only in event petitioner sustains her contention that she was defrauded in the purchase of her stock.

 As I view the situation, the petitioner's right to maintain this proceeding, in its final analysis, depends upon whether or not her claim that she was defrauded in the purchase of the stock is one provable in bankruptcy. Undoubtedly, claims such as that asserted by the petitioner in this case may properly be made the basis of a pure tort action, but the authorities are too well settled to admit of doubt that where a tortious act has resulted in the unjust enrichment of the tort-feasor, the tort may be disregarded and an action maintained on the theory of an equitable quasi contract. Schall v. Camors, supra; Crawford v. Burke, 195 U. S. 176, 25 S. Ct. 9, 49 L. Ed. 147; Tindle v. Birkett, 205 U. S. 183, 27 S. Ct. 493, 51 L. Ed. 762; Clarke v. Rogers, 228 U. S. 534, 33 S. Ct. 587, 57 L. Ed. 953; Friend v. Talcott, 228 U. S. 27, 33 S. Ct. 505, 57 L. Ed. 718; McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. Ed. 205.

Section 63 (4) of the Bankruptcy Act (11 USCA § 103 (4) enumerates among the debts declared to be provable against a bankrupt estate claims "founded upon an open account, or upon a contract express or implied." As this section has been construed by the Supreme Court in numerous cases, I have no doubt that the claim asserted by the petitioner is one provable in bankruptcy. Schall v. Camors, supra; Crawford v. Burke, supra; Tindle v. Birkett, supra; Clarke v. Rogers, supra; Friend v. Talcott, supra.

██ I cannot agree with the second contention of the respondent, that a defrauded

stockholder in an ordinary trading corporation, such as the respondent, will in no case be permitted to rescind after insolvency or bankruptcy intervenes. The cases most frequently cited on this general proposition are Upton v. Tribilcock, 91 U. S. 45, 50, 23 L. Ed. 203, and Chubb v. Upton, 95 U. S. 665, 667, 24 L. Ed. 523, but a careful reading of these two cases will demonstrate that they do not sustain the contention of the respondent.

In the Tribilcock Case the misrepresentations relied upon by the stockholder were clearly misrepresentations as to the law, and this fact was pointed out by the Supreme Court, and after so doing, the court made this remark: "That a misrepresentation or misunderstanding of the law will not vitiate a contract, where there is no misunderstanding of the facts, is well settled." Having decided that the misrepresentations relied upon were misrepresentations as to the law, and not of facts, and that such misrepresentations were not available to a party to any contract, it was not necessary for the court to go any further. The general observations made by the court in that case as to the right of a shareholder to seek relief on the ground of fraud were dicta, and not at all necessary to a decision of the case; but even these general observations do not support the contention that a defrauded shareholder cannot rescind after insolvency, if he has not been guilty of laches.

The Chubb Case is no more conclusive of the proposition than is the Tribilcock Case. The sentence in the Chubb Case most frequently relied upon in support of the contention under discussion is as follows: "It has been several times adjudged in this court, that, in an action by such assignee to recover unpaid subscriptions upon stock in such an organization, the defense of false and fraudulent representations inducing such subscription can not be set up; especially when the subscriber has not been vigilant in discovering such fraud, and in repudiating his contract."

It seems to me that the quoted language expressly recognizes the right of a defrauded stockholder to rely upon such fraud even after insolvency, if he has not been guilty of negligence or laches. The sentence just quoted, however, loses some of its force when we discover that the Supreme Court cited as the chief case in support thereof the case of Upton v. Tribilcock. At any rate, with but few exceptions the lower federal courts have not regarded these two cases, nor any other Supreme Court case, as conclusively establishing the rule that a stockholder in an ordinary trading corporation, who has been guilty of no laches, will be denied the right to rescind after insolvency. MacNamee v. Bankers' Union (C. C. A.) 25 F.(2d) 614; and cases there cited. See also 2 Clark & Marshall, Private Corporations, § 4738; In re Bancunity Corporation (D. C.) 36 F.(2d) 595; Flor v. Jandrew (C. C. A.) 15 F.(2d) 765; In re Morris Bros., Inc. (Smith v. Bronaugh) 293 F. 294 (C. C. A.); Davis v. Louisville Trust Co., 181 F. 10, 30 L. R. A. (N. S.) 1011 (C. C. A. 6th Cir.).

The cases of Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822, and Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218, and the cases which have followed these cases, are not in point. These two cases were dealing with the right of a shareholder of a national bank to plead fraud in the sale of the bank's stock to him in a suit brought by the receiver against the shareholder to enforce his double liability under the National Banking Act. In the Deweese Case the court construed section 5151 of the Revised Statutes (12 USCA § 63) as precluding such a plea being set up in opposition to the rights of creditors represented by the receiver in his suit, and in the Lantry Case the court not only adhered to this construction of section 5151 of the Revised Statutes, but gave as an additional reason for prohibiting such a plea in an action at law the fact that the defense was of an equitable nature, and as the law then stood, an equitable defense could not be interposed in an action at law. The fact, however, that the decision of these cases turned specifically upon the construction of the double liability provision of the National Banking Act, and involved the right of the defrauded stockholder in a national bank to plead the fraud as a defense against the claims of creditors of the bank, makes them inapplicable to the situation we have here. As the record now stands, there is no conflict between the petitioner and the creditors. No creditor is asserting any right against her, nor is she pleading the fraudulent sale of the stock to her as a defense to any statutory claim of creditors against her as a stockholder. It may be that if and when her claim is liquidated there may arise a question as to whether her claim is of equal dignity with those creditors of the respondent who were never stockholders, but that question is not now involved. MacNamee v. Bankers' Union, etc., supra. The question now is: Is her claim a provable one against the respondent?

I therefore conclude that the petitioner's claim on its face is a provable one, and that the fact that the respondent is now in the hands of a receiver does not of itself prevent her from maintaining this action.

On the face of the petition nothing appears from which it can be said as a matter of law that the petitioner is estopped, or that she has been guilty of laches. These pleas have been interposed by answer, and of course can be developed in the proof necessary to be taken for the purpose of liquidating petitioner's claim.

 Following the rule laid down by the Supreme Court in the case of Grant Shoe Co. v. Laird Co., supra, the next step necessary to be taken in this case is to liquidate petitioner's claim. Of course, the liquidation of this claim involves substantially the same procedure as would be involved had petitioner brought a suit in equity to rescind her purchase of the respondent's stock. She must establish false and fraudulent representations of past or existing material facts. She must establish that they were made by those acting for the respondent and with authority so to act, and that she relied and acted upon same. The respondent, of course, may meet with proof each of these issues, and in addition thereto may offer such proof as it sees fit on the question of estoppel and laches. I will confer with counsel at their convenience as to the method to be adopted for developing the proof.

It follows, of course, from what I have said that the motion to dismiss the petition will be overruled.