**HAWKINS et al. v. SWAN et al.**

District Court N. D. West Virginia.
Sept. 12, 1931.

Walter R. Haggerty, of Fairmont, W. Va., and S. T. Spears, of Elkins, W. Va., for plaintiffs.

D. H. Hill Arnold, of Elkins, W. Va., and Victor Shaw, of Fairmont, W. Va., for defendant Swan.

BAKER, District Judge.

This is a suit in equity instituted by Joseph F. Hawkins and others against James M. Swan, as receiver of the Union National Bank of Fairmont; the Fairmont Trust Company, a corporation, and directors thereof; Home Savings Bank of Fairmont, and the directors thereof; People's National Bank of Fairmont, and the directors thereof; and the Union National Bank of Fairmont, and the directors thereof.

On or about the 27th day of November, 1929, the Comptroller of the Currency approved a merger of the People's National Bank of Fairmont, the Fairmont Trust Company of Fairmont, and the Home Savings Bank of Fairmont, under the charter of the People's National Bank, but under the corporate title of the Union National Bank of Fairmont, with a capital stock of $420,000. The Union National Bank, formerly the People's National Bank of Fairmont, under its new charter, continued as one of the active banks of Fairmont until about the 16th day of December, 1930, on which date the affairs of said bank were, by the directions of the Comptroller of the Currency, placed in the hands of H. F. Stokes, National Bank Examiner. Thereafter James M. Swan was appointed receiver of said bank.

On the 9th day of February, 1931, the Comptroller of the Currency laid an assessment of 100 per cent. amounting to $420,000 upon the stockholders of the Union National Bank of Fairmont, to be paid on the 16th day of March, 1931.

Thereafter the plaintiffs, who were some of the stockholders in the Home Savings Bank, brought their bill in equity against James M. Swan, receiver of the Union National Bank of Fairmont, the named parties, and others averring that a conspiracy existed between the committees of the three named banks, which was unknown to the plaintiffs, whereby the merger of said three banks was effected; that at the time of said merger the People's National Bank of Fairmont was insolvent; that the Fairmont Trust Company was insolvent, but the Home Savings Bank was a going solvent concern; that by reason of the absolute insolvency of said two banks the Union National Bank was insolvent from the date of its inception, whereby the capital, surplus, and undivided profits of the Home Savings Bank were absorbed and said institution as so merged rendered insolvent. The plaintiffs, among other things, seek by their bill an examination of the papers, books, and records of said bank now in possession of said James M. Swan, receiver. The bill further seeks an injunction against James M. Swan, receiver, restraining him from suing plaintiffs or attempting to collect the alleged assessment for double indemnity against them on their stock; that he be enjoined, inhibited, and restrained from disbursing any of the funds that may be in his hands or that may come into his hands until the matters in issue are determined by this court and then to disburse same as directed by the court; that said James M. Swan, receiver, by an order of this court, be required, under such reasonable conditions as may be imposed by this court, to permit these plaintiffs to examine papers, books, and records of the said People's National Bank of Fairmont, the Fairmont Trust Company, the Home Savings Bank, and the Union National Bank of Fairmont, to the end that plaintiffs may have discovery of the material facts necessary for their case as alleged in the bill; that the said merger of the People's National Bank of Fairmont, the Fairmont Trust Company, and the Home Savings Bank, under the charter of the People's National Bank of Fairmont and under the title of the Union National Bank of Fairmont, be held void and set aside on the grounds that the same was obtained and consummated under false representations, conspiracy, and concealment; that the assets of the Home Savings Bank be segregated from the People's National Bank of Fairmont and the Fairmont Trust Company; and for other relief.

The defendant James M. Swan, receiver, has filed his motion to dismiss the bill and

his answer. Other defendants herein have filed their pleadings herein, but only the matters arising upon the motion of James M. Swan, receiver, to dismiss plaintiffs' bill and the motion for further discovery have been submitted to the court. (Permission for limited examination of certain records was heretofore granted the plaintiffs on their motion, not resisted at said time by the receiver or his counsel.)

I am of the opinion that the motion to dismiss of Receiver James M. Swan should be sustained, and my conclusions of law are as follows:

■ I. The merger, or consolidation, of the three banks was accomplished without a dissenting vote of the plaintiffs. The approval of the Comptroller of the Currency is a quasi judicial act not subject to review by the courts.

"The comptroller is clothed with exclusive jurisdiction to decide as to the completeness of the organization, and his certificate is conclusive on the subject and removes any objections which might otherwise be made to the evidence on which he acted." 7 Corpus Juris, page 758.

"The giving of the Comptroller's certificate is covered by the averment in the declaration, is not denied by the plea, and is, therefore, to be taken as admitted. The plea proposes to go behind the certificate and contradict it. This cannot be done. The Comptroller was clothed with jurisdiction to decide as to the completeness of the organization, and his certificate is conclusive upon the subject for all the purposes of this litigation." Casey v. Galli, 94 U. S. 673, 679, 24 L. Ed. 168.

■ II. Stockholders cannot escape liability to depositors, even though the subscriptions to stock were induced by fraud, 'and even though the deposits were made prior to the date when they became stockholders.

In the case of Williams v. Stone (C. C. A.) 25 F.(2d) page 831, at page 832, Judge Northcott, quoting Mr. Justice Harlan in the case of Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822, said: "The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if, at the time the rights of creditors accrued, he occupied and was accorded the rights appertaining to that position." See, also, Anderson v. Cronkleton (C. C. A.) 32 F.(2d) pages 170, 172. The bank operated for a few months before it was closed.

"A court is not compelled to close its eyes and ears to what everybody knows, viz., that a bank actively operating for eight months, as this one did, does have new creditors in the way of depositors and others. However, accepting the statement that no new creditors arose after these stockholders became such, the position taken by counsel is not sound. The statute under which the stockholders are liable (heretofore quoted) says that the stockholder shall be held individually responsible for all contracts, debts, etc., to the amount of his stock at the par value thereof, in addition to the amount invested in such stock. It does not say that he shall be responsible only for debts contracted after he becomes a stockholder, and it is not for courts to change the plain wording of a statute."

The Supreme Court of the United States has spoken on this subject in Handley v. Stutz, 139 U. S. 417, 11 S. Ct. 530, 537, 35 L. Ed. 227, saying: "But the moment shares are taken they are supposed to represent so much money put into the treasury as they are worth, which becomes available for the payment not only of future, but of existing creditors."

■■ III. The action of the Comptroller of the Currency in laying an assessment is a quasi judicial act and not subject to collateral attack or review by this court. The administration of insolvent national banks is vested, exclusively, in the Comptroller.

"The decisions of the Comptroller of the Currency are not subject to collateral attack, nor is his assessment against shareholders, and the amount thereof open to review; but, on the contrary, neither the bank nor the shareholders, clearly in the absence of fraud charged and proved, are entitled to a judicial determination of any question involved in his decision either as to the solvency, the sum due creditors and the amount of assessments as ordered, such matters one and all being exclusively within the judgment and discretion of the Comptroller, and as to which he acts in a quasi judicial capacity." Liberty

Nat. Bank v. McIntosh (C. C. A.) 16 F.(2d) 906, 909.

See, also, Collins v. Caldwell (C. C. A.) 29 F.(2d) page 329. See, also, 7 Corpus Juris, page 761.

IV. The bill having failed as to any relief against the receiver, Swan (and the matters of relief prayed for as against the banking department not being the subject of equitable relief), it cannot be maintained against said Swan, receiver, as a bill of discovery.

"Where discovery was sought as incidental to other relief, the jurisdiction to compel discovery rested upon the jurisdiction to grant the principal relief and failed if the bill failed as to the latter, and this is the rule at the present time." Volume 3, Cyclopedia of Federal Proc. page 868, § 960.

See, also, Equity Rule 58 (28 USCA § 723).

I therefore conclude that the bill should be dismissed so far as Receiver James M. Swan is concerned. The questions arising between the plaintiffs and defendants, other than Receiver James M. Swan, have not been formally submitted to me.