## YOUNG v. FLORIA.

### No. 6400.

United States Court of Appeals for the District of Columbia.

Argued May 9, 1935.

Decided Dec. 16, 1935.

276

Louis A. Gravelle, Thomas S. Markey, and Edward F. Howrey, all of Washington, D. C., for appellant.

Mark P. Friedlander, Lewis H. Shapiro, and Robert I. Silverman, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

Plaintiff in error, the receiver of the Exchange Bank, brought suit in the municipal court of the District to recover from defendant in error, Dr. Floria, hereafter referred to as defendant, a 100 per cent. assessment on 100 shares of $10 par value capital stock of the bank, alleged to be owned by him and in his name on the books of the bank on July 14, 1932, the date of the closing of the bank by the Comptroller of the Currency.

Floria defended on the ground that he was not the owner of the stock, but that he had transferred the same in September or October, 1931, to Joseph Schiavone, then president of the bank. It appears that defendant acquired the 100 shares of stock in March, 1931, from Schiavone, and thereupon became a member of the board of directors, and was the record owner of the stock until July 14, 1932. It further appears that in September or October, 1931, defendant, desirous of severing his connections with the bank as director and stockholder, indorsed the certificate, which indorsement was attested by one Kaufmann, vice president and cashier of the bank. The possession of the certificate

was then transferred to Schiavone with the statement that because of ill health he desired to sever his connections with the bank as director and stockholder. Schiavone agreed to take the stock, but requested defendant not to resign as a director.

It further appears that defendant did not at any time request the proper bank official to record the transfer, and the certificate was never handed to the transfer officer for recording on the books of the bank. Schiavone died November 11, 1931, and the certificate was found among his personal effects. Defendant attended meetings of the board of directors after the transfer of the possession of the stock certificate, and continued to attend after Schiavone's death, and as late as December 10, 1931. He continued as a director at the solicitation of the bank officers, with the understanding that he would not be re-elected at the following January meeting. When defendant's directorship ceased, he did not request that the stock transfer be recorded, nor were persons dealing with the bank apprized of the fact that he had disposed of the stock.

The court below directed the jury to return a verdict for the defendant, and from the judgment this appeal was taken.

Error is assigned on the ground that the defendant is estopped to deny ownership, having acted as stockholder and director after the date of the alleged transfer, and after the death of the transferee. We think this assignment is well taken. We are not here considering the validity of the conveyance between defendant and Schiavone or the estate of Schiavone. The transfer of the stock, however effectual between the parties, and sufficient to pass title, is not to be considered in connection with the liability of the defendant with reference to the rights of third persons.

This action was brought by the receiver as the representative of the stockholders and creditors. In Matteson v. Dent, 176 U.S. 521, 531, 20 S.Ct. 419, 423, 44 L.Ed. 571, Mr. Justice White, quoting from Shellington v. Howland, 53 N.Y. 371, 376, said: " 'There may have been a transfer by the defendant of his stock to the corporation in 1869, valid as between the parties to the transaction, and sufficient to vest the equitable title in the transferee, but the transfer was not consummated in the form required by statute, so as to affect the rights of strangers or to relieve

the defendant from his legal liability to third persons for the debts of the corporation. * * * The transfer of stock, quoad the public, is not complete until entered on the book designated by statute. An entry upon the books of registry of stockholders is required for the protection of the company and its creditors, and each may hold the stockholders to their liability as such until they have devested themselves of the title to their shares by a completed transfer, as prescribed by law. No secret transfer will avail to release the stockholder from his obligations, or deprive the creditors of the corporation of the right to look to him as the responsible party liable for the debts of the corporation.' Indeed, this doctrine is so universally settled that it is treated as elementary."

It would appear from the facts in the present case that by the agreement of defendant to continue as director there was at least an implied understanding on the part of the officers of the bank that the transfer of the certificate on the books should not take place until the directorship ceased, since his record as a stockholder was essential to his qualification to act as director. Both the retention of his name on the books as a stockholder and his acting as director was notice to the public, the stockholders, and creditors of the bank that his connection with the bank had not in any manner ceased or been changed. Permitting this condition to exist, defendant is completely estopped from now claiming relief because of the agreement entered into between himself and the president of the bank relative to the transfer of this stock. As was said by Mr. Justice Harlan in Scott v. Deweese, 181 U.S. 202, 213, 21 S.Ct. 585, 589, 45 L.Ed. 822: "The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally."

■ It may be stated as a general rule in these cases that liability for assessment attaches to the person in whose name the stock stands on the books of the bank, even though he may have transferred the stock to another person. Unless the transfer is recorded on the books of registry of the bank, the registered owner remains liable. Upton v. Tribilcock, 91 U.S. 45, 23

L.Ed. 203; Sanger v. Upton, 91 U.S. 56, 23 L.Ed. 220; Webster v. Upton, 91 U.S. 65, 23 L.Ed. 384; Pullman v. Upton, 96 U.S. 328, 24 L.Ed. 818; Anderson v. Philadelphia Warehouse Co., 111 U.S. 479, 4 S.Ct. 525, 28 L.Ed. 478; Richmond v. Irons, 121 U.S. 27, 58, 7 S.Ct. 788, 30 L. Ed. 864.

■ The strict rule, thus announced, is modified to the extent, however, that the presumption of liability for an assessment on shares of stock in an insolvent bank, arising merely from the presence of a person's name on the stock ledger, may be rebutted by evidence that the record owner has transferred his stock and has done all that a careful and prudent business man can be required to do to effect such transfer. Had defendant, when the transfer of his stock was made, delivered the certificate to the registration officer of the bank with express directions to make the proper transfer on the books, and had he then severed all connection with the bank, both as stockholder and director, he would properly have done all that was required of him to relieve himself from further liability for assessments on the stock. To accomplish this and relieve himself from liability, he would not be required to stand over the officer and see that the transfer was properly recorded on the books. His delivery of the certificate to the officer, whose duty it was to make such record, would be sufficient to exonerate him from further liability. As was said in Matteson v. Dent, supra, "Where a transfer of stock is made and delivered to officers of a bank, and such officials fail to make entry of it, the acts referred to will operate a transfer on the books, and extinguish the liability as stockholder of the transferer. Whitney v. Butler, 118 U.S. 655, 7 S.Ct. 61, 30 L.Ed. 266."

Defendant, however, falls far short of meeting these conditions. As we have suggested, the assignment of the certificate without any request on his part to have the assignment properly recorded on the books of the bank, and his agreement to continue at the request of the officers, as a director, by reasonable implication at least, amounted to a mere executory contract to be completed in the future, which was never done; and when the bank closed and passed into the hands of the receiver his record as a stockholder stood unchanged as it had done both prior to and after the making of this agreement between

defendant and the president of the bank. So far as the record stood, there was no notice to the public, the stockholders, or the creditors of the bank that there had been any change in defendant's relation to the bank.

The judgment is reversed, with costs.