### ANGENY et al. v. KEUPER.

District Court, D. New Jersey.
Sept. 24, 1936.

Kremer & Proctor, of Asbury Park, N. J., for complainants.

Walter Fox, of Asbury Park, N. J., and Charles E. Wainwright, of Washington, D. C., for defendant.

FORMAN, District Judge.

Plaintiffs were stockholders in the First National Bank of Avon-by-the-Sea, referred to hereafter as the "Old Bank." That institution became involved in difficulties in June of 1931. At the instance of Alexander B. McCans, assistant bank examiner acting on behalf of the Comptroller of the Currency, a meeting was called wherein it was found necessary to inject $60,000 of new capital into the venture or the Bank would be required to close its doors.

The following plan was proposed: The directors were to raise $32,000 and $28,000 was to be obtained from an agency of the Monmouth County Clearing House known as the Rumson Holding Company. Application was to be made for a charter for the First National Bank in Avon-by-the-Sea, hereafter called the "New Bank." The "New Bank" was to take over all the obligations of the "Old Bank." The "Old Bank" was to give the "New Bank" a note in the amount thereof. This was all done and the amount of the note was $495,959.-83.

The "New Bank" functioned until the early part of 1932, and then it was proposed to assess the subscribers to its stock. This attempt was abandoned at that time, and instead the stockholders in the "Old Bank" were assessed. After this assessment, the "New Bank" continued doing business until the National Bank "Holiday" of March 6, 1933. It closed then, never to reopen, and its affairs since have been in liquidation in the hands of the defendant.

The defendant now seeks to enforce assessment on the stock in the "New Bank," and to that end has sued one of the plaintiffs on the law side of this court.

Hence this bill to restrain the defendant from prosecuting any suit at law against the plaintiffs for assessment on stock in the "New Bank" at this time or at least until liquidation of the "Old Bank" is completed.

The plaintiffs say that they were induced to subscribe to the stock of the "New

Bank" by the explicit representation made by the Examiner McCans, representing the Comptroller, that the stock in the "New Bank" would not be assessable. They were willing at that time to have their liability terminated once and for all by having their stock in the "Old Bank" assessed. It was, however, felt at that time (1931) that such an action would not only react upon the "Old Bank," but every other banking institution on the New Jersey coast would feel the repercussion of such an action.

The plaintiffs further contend that their subscription to the stock of the "New Bank" was in the nature of one assessment, that their payment of the call upon the stock of the "New Bank" was a second assessment, and that the contemplated assessment is a third upon their original holdings. The plaintiffs also allege that the indebtedness of both "Old" and "New" banks has been very materially decreased and intimate that further administration by the defendant may dissolve the same entirely.

The defendant asserts that the grievances thus set up in the bill and affidavits do not constitute a cause of action to sustain the bill and moves for its dismissal.

Examiner McCans filed an affidavit denying that he represented the stock of the "New Bank" as being nonassessable, but the defendant charges, whether he did or did not so represent, the bill cannot stand. In other words, admitting all the facts set up in the bill as being true, the defendant charges that it recites no legally tenable action against him. He therefore moves to dismiss the bill.

The stockholders are made responsible for all contracts, debts, and engagements of a national bank to the amount of the par value of their holdings in addition to the amount invested in the stock. 12 U.S.C.A. § 64. This provision of the law is for the benefit of creditors of the bank, chiefly its depositors. The plaintiffs here allege that the statutory liability is nullified by reason of representations made to them by an agent of the Comptroller. They say that such representations induced their agreement to take such shares. Those representations, if made at all (they are denied by affidavit), were disclosed to none but the stockholders. They could not bind the depositors or creditors of the bank who had a right to rely on the benefits provided for them in the statute above cited. No official of the government had the right to "deal" those statutory benefits away. If Mr. McCans agreed so to do (and he denies that he did), the stockholders should have known that he was attempting something beyond his power. If, indeed, he did so represent, the stockholders gained nothing by such representation.

"The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of § 5151 [12 U.S.C.A. §§ 63, 64], if, at the time the rights of creditors accrued, he occupied and was accorded the rights appertaining to that position." Scott v. Deweese, 181 U.S. 202, at page 213, 21 S.Ct. 585, 589, 45 L.Ed. 822.

The determination of the Comptroller to assess is conclusive. It can only be avoided in direct proceedings for clear error of law, fraud, or mistake. That ultimately, as this bill alleges, an intelligent administration of the estate of the defunct bank will so marshal its assets as to dissolve all of its liabilities, is no reason to restrain the Comptroller from making assessment. He may make it at such time as he may deem proper and upon such data as shall be satisfactory to him. Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476; B. V. Emery & Co. v. Wilkinson (C.C.A.) 72 F. (2d) 10. See 12 U.S.C.A. § 64, together with notes thereunder including notes in the 1935 Cumulative Supplement thereto.

Under these circumstances the order to show cause why the Comptroller should not be restrained will be discharged, and for like reasons the bill must be dismissed.