## ANDERSON et al. v. CRONKLETON.

Circuit Court of Appeals, Eighth Circuit. April 9, 1929.

No. 8126.

M. F. Harrington, of O'Neill, Neb., for plaintiffs in error.

Hugh J. Boyle, of Norfolk, Neb., for defendant in error.

Before STONE and KENYON, Circuit Judges, and JOHNSON, District Judge.

KENYON, Circuit Judge. This case went off in the trial court upon motion for judgment on the pleadings. The First National Bank of Wausa, Neb., became insolvent, and by action of its board of directors was turned over to the Comptroller of the Currency of the United States on the 6th day of July, 1925. Defendant in error was duly appointed, by said Comptroller, receiver of said bank. Plaintiffs in error were stockholders and had been for some time. August 21, 1925, the Comptroller of the Currency made an assessment against the stockholders for an amount equal to the par value of the stock owned by them. Plaintiffs in error refusing to pay said assessment this action was instituted and judgment asked against a large number of stockholders on their individual liability for said assessment. The answer sets forth two alleged defenses: (1) That they were induced to become stockholders by false and fraudulent representations made by said bank, its officers, and agents; (2) that no new debts had been created since they became stockholders. The court sustained a motion of defendant in error for judgment, and judgment was entered against each of the stockholders involved. On the same day a motion was filed by plaintiffs in error to transfer the cause to the equity docket, which was denied. It is not questioned that when the bank was taken charge of by the Comptroller of the Currency it was insolvent, and all of plaintiffs in error were at that time stockholders of record.

The section of the statute under which liability is asserted is as follows: "Section 64.

Individual liability of shareholders; transfer of shares. The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure." 12 USCA. This is plain, unambiguous, and not difficult to understand. When a national bank becomes insolvent and is taken over by the Comptroller of the Currency and placed in the hands of a receiver all its assets pass to the control of the receiver. Earle v. Pennsylvania, 178 U. S. 449, 20 S. Ct. 915, 44 L. Ed. 1146. Where an action is brought by such receiver to recover an assessment legally made against a stockholder, it is not a defense that the stockholder was induced by fraud on the part of the officers of the bank to purchase said stock. This might be a defense in an action between the bank and the stockholder, but it is not material in an action between a receiver duly appointed by the Comptroller of the Currency and the stockholder. Such action is for the purpose of protecting the depositors and other creditors. A different rule applies as between the bank itself and the stockholders and as between the stockholders and the creditors of the bank.

One whose name rightfully appears on the books of a national bank as a stockholder is under this statute subject to certain liabilities, regardless of how he may have acquired the stock. It seems to us this question is absolutely put at rest by two decisions of the Supreme Court, viz., Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822, and Lantry v. Wallace, 182 U. S. 536, 21 S. Ct. 878, 45 L. Ed. 1218. The case of Scott v. Deweese, supra, is one of the leading cases on this subject. While the facts are not exactly the same as in the present case, as the defendant had received dividends, which is not of controlling importance, the principles announced are applicable. We quote from that opinion, page 213 of 181 U. S. (21 S. Ct. 589) as follows: "* * * Immediately upon the failure of the bank the rights of creditors attached under section 5151 [12 USCA § 63], and a shareholder who was such when the failure occurred could not escape the individual liability prescribed by that section upon the ground that the bank had issued to him a certificate of stock before, strictly speaking, it had authority to do so. * * * The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practised upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if, at the time the rights of creditors accrued, he occupied and was accorded the rights appertaining to that position." In that case Scott claimed to have become a subscriber to the stock in consequence of frauds practiced upon him. The Supreme Court says he must look to the parties who practiced the fraud for redress, and that he cannot raise this question as against the creditors after the failure of the bank. That case went from this court, Scott v. Latimer (C. C. A.) 89 F. 843.

In Lantry v. Wallace, 182 U. S. 536, 548, 21 S. Ct. 878, 45 L. Ed. 1218, an action brought by the receiver of a national bank under the statute hereinbefore set forth, it was claimed that defendant became a shareholder in consequence of fraudulent representations of the bank's officers. The court propounded two questions as involved. One, "whether such representations, relied upon by the defendant, constituted a defense in the present action brought by the receiver only for the purpose of enforcing the individual liability imposed by section 5151 of the Revised Statutes upon the shareholders of national banking associations." The court answered this in the negative. This case also went to the Supreme Court from this court (97 F. 865).

In Whitney v. Butler, 118 U. S. 655, 660, 7 S. Ct. 61, 63 (30 L. Ed. 266), the court said, referring to other cases: "In nearly all of them, where the issue was between the receiver, representing the creditors, and the person standing on the register of the bank

as a shareholder, it is said, generally, that the creditors of a national bank are entitled to know who, as shareholders, have pledged their individual liability as security for its debts, engagements, and contracts; that if a person permits his name to appear and remain in its outstanding certificates of stock, and on its register, as a shareholder, he is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder."

There is language in Newton Nat. Bank et al. v. Newbegin, 74 F. 135, 140, 33 L. R. A. 727 (this court), which would give some aid to the theory advanced here by plaintiffs in error, but we think the case is distinguishable, and, if it is not, it must be borne in mind that Scott v. Latimer in this court, and Scott v. Deweese in the Supreme Court, are later decisions. This court did in Newton National Bank v. Newbegin make this interesting observation: "When a corpora-, tion becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the rôle of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion."

This court in Scott v. Abbott, 160 F. 573, pointed out that a stockholder might institute action before the suspension of the bank and secure a rescission of his contract of subscription for fraud practiced upon him, but that it could not be done after suspension, in view of the decision of the Supreme Court in Scott v. Deweese, supra.

In Salter v. Williams et al. (D. C.) 219 F. 1017, the opinion follows Scott v. Deweese, and holds that upon failure of the bank the rights of creditors attach and that a stockholder cannot escape individual liability on the ground that he took the stock through misrepresentation and deceit on the part of an officer of the bank. See, also, Robertson v. Conway et al. (C. C. A.) 188 F. 579.

In Ryan v. Mt. Vernon Nat. Bank, 224 F. 429, on the authority of Lantry v. Wallace, supra, the Circuit Court of Appeals of the Second Circuit held that the defense of alleged false representations made by the vice president of the insolvent bank to a stockholder was no defense to an action to recover an assessment against such stockholder, and held that the creditors were entitled to have the statutory liability imposed upon stockholders by the National Banking Act enforced against all persons who were stockholders when the bank failed; that any remedy for false representations must be against the party or the bank of which he might be an officer.

In Page v. Jones (C. C. A.) 7 F. (2d) 541, 545, defendant sought to be relieved of statutory liability by the claim that he had been defrauded into paying 110 per cent. into the bank by the false representations of its officers and directors as to the legal effect of that payment. This court said: "The creditors of the bank were not responsible for the acts or representations of the officers and directors of the bank to their shareholders, and if they defrauded the shareholders their remedy is against them, and not against the creditors of the bank and their creditors."

Counsel for plaintiffs in error cites some state cases, such as Farmers' State Bank of Mobridge v. Empey, 35 S. D. 107, 150 N. W. 936, and People v. California Safe Deposit & Trust Co., 19 Cal. App. 414, 126 P. 516, 520, where the language might be thought to support his theory, but no federal cases, except the Newbegin Case. Wallace v. Bacon (C. C.) 86 F. 553, was not a decision of the appellate court. There is a wealth of federal and state cases holding otherwise, among which may be cited, Cox v. Dickie et al., 48 Wash. 264, 93 P. 523; Duke v. Bolster, 123 Wash. 702, 211 P. 715; Wehby v. Spurway, 30 Ariz. 274, 246 P. 759; Taylor v. American Nat. Bank (D. C. Tex.) 2 F. (2d) 479; Williams v. Stone (C. C. A.) 25 F. (2d) 831. The authorities we have referred to would seem to settle this question beyond any peradventure of doubt.

Counsel for plaintiffs in error very ingeniously urges that the stockholders would be liable only as to those who were creditors when they became stockholders, and that under this record it is conceded there were no new creditors after that time. Counsel relies on this as the decisive question in the case. Even though it be stated in some of the pleadings that no new debts were contracted by the bank after these stockholders became such, a court would not be compelled to accept such statement in the face of circumstances conclusively showing otherwise. In discussing Scott v. Latimer, supra, counsel for plaintiffs in error refers in his brief to the fact that the party seeking to defeat assessment had owned the stock for four years and says: "Of course, in that long period it is plain there was a multitude of new creditors." The period there was four years. Here it is eight months. If there must be a multitude of new creditors in four years, it must be true that there would probably be one-sixth of such multitude in eight months. A court is not compelled to close its eyes and ears to what everybody knows, viz., that a bank actively operating for eight months,

as this one did, does have new creditors in the way of depositors and others. However, accepting the statement that no new creditors arose after these stockholders became such, the position taken by counsel is not sound. The statute under which the stockholders are liable (heretofore quoted) says that the stockholder shall be held individually responsible for *all* contracts, debts, etc., to the amount of his stock at the par value thereof, in addition to the amount invested in such stock. It does not say that he shall be responsible only for debts contracted after he becomes a stockholder, and it is not for courts to change the plain wording of a statute. Creditors existing at the time a party becomes a stockholder are entitled to the protection of the statute to the same extent as those who become creditors thereafter. In the present case this bank had been reorganized and these plaintiffs in error bought their stock at the time of reorganization. During the eight months they were stockholders their names may have added to the prestige of the bank, and persons may have remained depositors and creditors because of confidence in them. The Supreme Court of the United States has spoken on this subject in Handley v. Stutz, 139 U. S. 417, 436, 11 S. Ct. 530, 537 (35 L. Ed. 227), saying: "But the moment shares are taken, they are supposed to represent so much money put into the treasury as they are worth, which becomes available for the payment not only of future, but of existing creditors."

National banks are quasi public institutions established by and subject to the regulatory laws of Congress. The statute imposing double liability on stockholders, while primarily to create a fund for the benefit of depositors and other creditors, serves a general public purpose, viz., to give stability to the national banking system, and place a national bank on a strong foundation. If stockholders were permitted to show after the insolvency of the bank, in order to escape liability under the statute, that they became stockholders through fraud practiced upon them by officers of the bank of which they were a part, or could claim they were responsible only as to creditors who came into existence as such after they became stockholders, the foundation of a national bank would be undermined, and its public function greatly impaired. There is little immunity for a stockholder in a national bank after the same becomes insolvent and has been taken over by the Comptroller of the Currency and a receiver appointed. Hardship at times, as is alleged in the argument here, may result, but no person is under any obligation to take stock in a national bank. He may be lured so to do, as is apparently the case here, by the thought of large dividends, one of the false representations alleged being that the bank had in the past been earning 30 per cent. dividends, or he may take the stock in order to achieve a certain local prominence and prestige as a stockholder in a national bank, but if he does so he must take the same with the attendant liabilities created by law and with knowledge that if the bank becomes insolvent he is subject to a double liability and is barred after such insolvency, when action is brought to recover an assessment against him, from a defense that he was induced by fraud to take the stock or that his liability extends only to the protection of those who became creditors after the time he became a stockholder. He cannot accept the benefits of stock ownership in a national bank and deny liability as to creditors if trouble and insolvency come.

This action is based on the fact there were creditors, and of course there were in abundance. The trial court committed no error in instructing a verdict for the defendant in error. The judgment as to all the plaintiffs in error is affirmed.