## RAWLINGS v. MEREDITH.

### No. 7828.

Circuit Court of Appeals, Fifth Circuit.

Nov. 16, 1935.

D. H. Edington, of Mobile, Ala., for appellant.

Alexander C. Birch, of Montgomery, Ala., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By bill in equity, filed April 28, 1934, J. E. Meredith sought the cancellation of an entry on the registry book of the Mobile National Bank showing that appellee was the owner of 133 shares of the capital stock of that bank, that the claim of the appellant as receiver of that bank against the appellee, based upon an assessment made by the Comptroller of the Currency on April 11, 1934, against the stockholders of that bank for the par value of each share of the capital stock in said bank held and owned by them, be canceled, and that appellant as such receiver be permanently enjoined from instituting any action at law against appellee to recover against him any assessment for or on account of his alleged ownership of said shares of stock in said bank. The court overruled appellant's motion to dismiss the bill. Thereupon appellant filed an answer and cross-bill. Upon the submission of the cause for final decree on the pleadings, and on an agreed statement of facts, the court rendered a decree granting the relief prayed for by appellee.

The following is a summary of the facts agreed on: On July 9, 1930, appellee sold to William B. Taylor, then president of the Mobile National Bank, certain real estate, reserving a vendor's lien for the unpaid balance of the purchase price, evidenced by Taylor's promissory notes for the aggregate sum of $2,000. Upon Taylor representing to appellee the former's inability to pay the purchase-money note first falling due, appellee, on May 22, 1931, agreed to accept 133 shares of the Mobile National Bank then owned by Taylor in full payment of the balance on the land transaction, with the understanding that Taylor was to be entitled to dividends which might accrue on that stock in July, 1931; the par value of the stock being $10 a share. The stock certificate for the 133 shares was issued to appellee on May 22, 1931. The appellee then released the vendor's lien on the real estate and delivered to Taylor the canceled deferred payment notes. Appellee accepted the stock in payment of the debt due him in reliance on representations made by Taylor, a friend of long standing, who had often advised appellee in financial matters, that the book value of the stock was $15.85 a share, and that he believed the stock was easily worth $20 a share. At the time appellee accepted the stock the Mobile National Bank was in failing condition, and the stock probably was worthless, which fact was known to Taylor. On June 20, 1931, the Mobile National Bank closed its doors, and ceased to do a banking business. On June 22, 1931, it conveyed its assets to the Merchants National Bank of Mobile, Ala., under a contract whereby the Merchants National Bank of Mobile assumed the payment of all liabilities of the Mobile National Bank, other than the liabilities of the last-named bank to its shareholders on account of capital stock surplus and undivided profits. By provisions of that contract the Mobile National Bank warranted that its assets turned over to the Merchants National Bank would be sufficient to produce enough money to enable the Merchants National Bank by July 1, 1934, to realize the full amount of the liabilities assumed by it; and the last-named bank was given the right to request the Comptroller of the Currency to appoint a receiver for the purpose of enforcing the assessment liability of the shareholders of the Mobile National Bank in the event the Merchants National Bank could not be reimbursed in full from the assets so delivered to it. Upon the execution of that contract and the delivery of assets pursuant to it, the Merchants National Bank proceeded to liquidate the affairs and business of the Mobile National Bank in accordance with that contract.

Immediately upon learning of the closing of the Mobile National Bank, appellee demanded of Taylor that the contract under which the stock had been transferred be rescinded and canceled, which was agreed to by Taylor, who, on June

24, 1931, executed a deed reconveying the real estate to appellee, who then delivered to Taylor the certificate for 133 shares of bank stock. On the same day appellee and Taylor called on Mr. Ernest F. Ladd, president of the Merchants National Bank, to whom had been delivered the records of the Mobile National Bank in accordance with the above-mentioned contract of June 22, 1931, stated to Mr. Ladd that the transaction whereby the 133 shares of bank stock were transferred to appellee had been rescinded, and requested that the certificate for that stock be transferred on the stock register of 'the Mobile National Bank to the name of Taylor. Mr. Ladd, on behalf of the Merchants National Bank, refused to comply with that request.

In the early part of the year 1934, the Merchants National Bank advised the Comptroller of the Currency that it had been finally determined that the assets of the Mobile National Bank conveyed under the terms of the agreement of June 22, 1931, were insufficient to satisfy the liabilities assumed by the Merchants National Bank, and requested the appointment of a receiver empowered to enforce the assessment liability of the shareholders of the Mobile National Bank in the event the Comptroller of the Currency found the appointment of a receiver necessary. Thereupon appellant was appointed receiver of the Mobile National Bank by the Comptroller of the Currency, and, in accordance with an assessment on April 11, 1934, of $10 on each share of the capital stock of said bank, appellee was duly notified of that assessment on April 16, 1934, the same to be due and payable on or before May 18, 1934.

Counsel for appellee admits that at law there is no defense against the assessment made against appellee under the statute (12 U.S.C.A. § 64), and that the question of the existence of such defense at law was finally disposed of adversely by the decision in the case of Scott v. Deweese, 181 U.S. 202, page 213, 21 S.Ct. 585, 589, 45 L.Ed. 822, the opinion in which case contains the statement: "If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is

a shareholder, within the meaning of § 5151, if, at the time the rights of creditors accrued, he occupied and was accorded the rights appertaining to that position."

In argument in behalf of the appellee, attention was called to the fact that in the case of Lantry v. Wallace, 182 U.S. 536, 21 S.Ct. 878, 883, 45 L.Ed. 1218, which was a suit at law for the enforcement of the statutory liability of a national bank shareholder wherein it was decided that fraud whereby the defendant was induced to become a shareholder was not a defense to the action, the court in its opinion stated: "We must not be understood as expressing any opinion upon the question whether the defendant could have been discharged from liability as a shareholder if the facts stated in his answer by way of defense had been established in a separate suit in equity. Whether a decree based upon the facts set forth in the answer, even if established in a suit in equity, brought against the bank and the receiver after the appointment of a receiver, would be consistent with sound principle or with the statute regulating the affairs of national banks and securing the rights of creditors, is a question upon which we do not now express an opinion."

So far as we are advised, prior to the decision now under review, no court had decided that on a state of facts such as is disclosed in the instant case a national bank shareholder has a defense in equity against an assessment duly made against him in pursuance of the statute. In the cases in equity which have come to our notice wherein was presented the question of whether the right to enforce an assessment under the statute is affected or impaired by the fact that by fraud the shareholder was induced to acquire the shares standing in his name, the decisions were to the effect that the rights of the failed bank's creditors were not affected by such fraud. Ryan v. Mt. Vernon Bank (C.C.A.) 224 F. 429; Willcox v. Harriman Securities Corporation (D.C.) 10 F.Supp. 532.

█ It is well settled that a person who permits his name to appear and remain on a national bank's register as a shareholder is estopped, as between himself and the creditors of the bank, to deny that he is a shareholder. Matteson v. Dent, 176 U.S. 521, 530, 20 S.Ct. 419, 44 L.Ed.

571; Anderson v. Philadelphia Warehouse Co., 111 U.S. 479, 4 S.Ct. 525, 28 L.Ed. 478; Whitney v. Butler, 118 U.S. 655, 660, 7 S.Ct. 61, 30 L.Ed. 266; Anderson v. Cronkleton (C.C.A.) 32 F.(2d) 170, 171; Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457. The above-stated rule does not apply in the case of one whose name gets or remains on the books of a bank as a shareholder without his knowledge or consent, or who is incapable of binding himself as a bank shareholder. Whitney v. Butler, supra; Schlener v. Davis (C.C.A.) 75 F.(2d) 371, 373, 99 A.L.R. 498. It appears that by appellee's voluntary action his name got on the Mobile National Bank's books as a shareholder, and remained there until and including the time when that bank closed its doors and ceased to do business. The liability under an assessment against shareholders of a bank is one created by statute in favor of the bank's creditors, and cannot be modified or released by any action on the part of the bank. One, by allowing his name to appear on a bank's stock list as owner, represents that he is such owner, and he will not be permitted, after the bank fails, and when an assessment is made, to assume any other position as against the bank's creditors. Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844; Scott v. Latimer (C.C.A.) 89 F. 843, 852, 853, affirmed 181 U.S. 202, 21 S.Ct. 585, 45 L.Ed. 822. Attention was called to the following statement contained in the opinion in the case of Anderson v. Cronkleton, supra: "One whose name rightfully appears on the books of a national bank as a stockholder is under this statute subject to certain liabilities, regardless of how he may have acquired the stock." That the word "rightfully" as used by the court was intended to mean or imply that the fact that one was induced by fraud to take stock standing in his name on a bank's books constitutes a defense to a statutory assessment made against him is plainly negatived by the circumstance that in that case the court decided that the fact that a stockholder was induced by fraud to buy stock is no defense to an action brought by a receiver to recover a statutory assessment legally made against him. Evidently that word was used to distinguish the case of one who permitted or allowed his name to appear on a bank's books as a shareholder from the case of one whose name got or remained on a bank's books as a shareholder without his knowledge or consent, or who was incapable of subjecting himself to liability as a bank shareholder. Nothing contained in the opinion in that case furnishes any support for the contention that fraud such as that shown in the instant case constitutes a defense, at law or in equity, against the enforcement of an assessment legally made under the statute against one who voluntarily became a shareholder in a national bank and permitted his name to remain on the bank's books as a shareholder until the bank failed and ceased to do business as a bank.

The facts agreed on do not include anything which, by virtue of any principle or doctrine recognized by courts of equity alone, has the effect of precluding the enforcement, for the benefit of the failed bank's creditors, of the assessment against appellee. In the absence of anything giving rise to an equitable right in favor of the appellee as against the failed bank's creditors to prevent the enforcement of the assessment in question, the appellee's position with reference to that assessment is no better in a court of equity than it is in a court of law. So far as appears, there was no transaction between the appellee and the failed bank's creditors, or any one representing them, between the time when, by appellee's voluntary action, his name got on the failed bank's books as a shareholder, and the time when the assessment in question was made against him. In no way was it made to appear that appellee acquired an equitable right to prevent the enforcement of the assessment. It follows that the court erred in denying appellant's motion to dismiss appellee's bill. Because of that error, the decree is reversed.