## MILLER v. CONTINENTAL SHIPBUILDING CORPORATION.

(Circuit Court of Appeals, Second Circuit. March 12, 1920.)

No. 82.

1. Contracts ⊂⊃97(1)—Right to rescind for fraud waived, if not promptly exercised.

A party to a contract, having the right to rescind it on the ground of fraud, must, on discovery of the facts, at once announce his intention and adhere to it, and if he thereafter proceeds under the contract he waives the right of rescission.

2. Contracts ⊂⊃97(1)—Right to rescind for fraud held waived.

A judgment denying plaintiff recovery of money paid on a contract for building a vessel, which he declared rescinded on the ground that it was induced by fraudulent representations by defendant that it had a shipyard fully equipped, held sustained by evidence showing that, shortly after the contract was signed, plaintiff visited the place where defendant was then building its shipyard and continued to make payments on the contract for two months thereafter without objection, during which time defendant entered into contracts and obligations for material for the vessel.

3. Witnesses ⊂⊃275(2)—Latitude allowed in cross-examination of party.

Permitting questions on cross-examination of a plaintiff, the answers to which showed that prior to coming to this country he had been in business in Germany, held not error; it being usual to allow considerable latitude in cross-examination of a party.

4. Appeal and error ⊂⊃1031(3)—Admission of immaterial evidence not presumed prejudicial.

To justify a reversal because of the admission of immaterial evidence, it should appear that the error was so substantial as to injuriously affect the rights of plaintiff in error, as prejudice will not be presumed.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of New York.

Action by G. Alfred Miller against the Continental Shipbuilding Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

The action was originally brought in the Supreme Court of the state of New York in the county of Richmond. It was removed into the United States District Court on the ground of diversity of citizenship. The plaintiff is a resident of the state of New York, in the county of Richmond. The defendant is a corporation organized and existing under the law of the state of Delaware.

The action is brought to recover a sum of money paid by plaintiff on a contract dated January 7, 1918, on which date it was signed by plaintiff. It was not signed by defendant until January 18, 1918. The delay was occasioned by plaintiff's failure to make an initial payment of $10,000, which the contract called for and acknowledged the receipt of; the plaintiff saying that he had not yet received a check for the amount of the down payment, but expected it at any moment. It was agreed that plaintiff should keep the contract, which he had signed, until his money came, and then send the money and contract to defendant. The deferred payment was made, however, on January 18th, and defendant thereupon affixed its signature thereto.

The agreement was that defendant would furnish the labor and materials necessary for the construction of a wooden steamer, and that plaintiff would pay to defendant the entire cost of building the vessel, plus the sum of 15 per cent., to cover defendant's profit. The payments were to be made as follows: The sum of $10,000 on the signing of the contract; the sum of $12,000 upon starting the work of construction; payments on the 1st and 15th of each month of that portion of the cost of the vessel which was paid by the defendant, plus 15 per cent. of such cost; advance payments to be made by plaintiff to defendant upon the placing of orders for machinery and materials.

A separate contract was signed between the parties, wherein it was agreed that the plaintiff should receive 5 per cent. of the cost of building the vessel for supervision. The plaintiff testified that this was to cover his expenses for an office, cables, telephones, telegrams, stenographers, and assistants.

The plaintiff in his complaint alleged that he had made various payments under the contract, which aggregated $49,002.02, and he demanded judgment for that amount, alleging that the contract was induced by fraud. At the trial plaintiff's counsel, however, stated that the amount involved would be reduced from the amount stated in the complaint to the sum of $47,305.47.

The jury returned a verdict for defendant, and judgment was entered on December 10, 1918, in defendant's favor, for the sum of $51.20 costs.

Edward M. Grout and Paul Grout, of New York City (Charles B. La Voe, of New York City, of counsel), for plaintiff in error.

Grant C. Fox, of New York City, for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This action was brought for money had and received, upon a contract rescinded by plaintiff because of alleged false representations. The contract, which plaintiff entered into in his own name, was in fact made on behalf of his principal in Morocco; but that fact was not disclosed at the time the contract was signed, and is not material in the decision of the case. The contract called for the construction of "one 1,500-ton D. W. wooden steamer," according to plans and specifications annexed to the contract, and was to be especially adapted for carrying coal on ocean voyages. As originally drafted, the contract

did not specify when the vessel was to be completed. A clause, however, was subsequently added which provided that the vessel was to be completed "in June, 1918, subject to delays caused by the government or by strikes or by subcontractors."

The plaintiff alleged in his complaint that defendant falsely and fraudulently represented to him that it had a shipyard fully equipped and located at Ludlow, N. Y., on the Hudson river, equipped for the immediate construction of a vessel of the type described in the contract, and that it could and would construct and deliver to plaintiff such vessel within the time agreed upon; that it represented that it was working on United States government orders for the building of vessels, and that unless plaintiff at once signed the contract defendant would be unable to construct a vessel for him. It was alleged that these representations were false, and known to be false by defendant at the time they were made, and that they were made with intent to deceive the plaintiff as to their truth, hoping thereby to induce him to enter into the contract, which otherwise he would not have been persuaded to sign. It was alleged, also, that the plaintiff, relying on these representations, entered into the contract, and paid to defendant under the contract, and by reason of false statements that the vessel was being constructed by defendant at its yard, defendant knowing at the time that the statements were untrue, various sums of money, amounting, as heretofore stated, to $49,002.02. The plaintiff, upon discovering that the representations were untrue, duly demanded before the commencement of the action the return of the sum aforesaid, and that defendant refused to comply with the demand. The answer denied that any fraudulent representations had been made, and demanded judgment dismissing the complaint and for the costs of the action.

[1] This raised an issue of fact, which the court submitted to the jury, instructing them that, if they found that the statements alleged were made, and were false, and known to defendant to be false, their verdict was to be for the plaintiff, unless they found that the plaintiff, after ascertaining their falsity, nevertheless continued to act as though they had not been made; but that, if they found that the plaintiff continued so to act after ascertaining the truth, he could not thereafter come into court and complain that he made the contract, induced thereto by reason of defendant's false representations. On this phase of the subject he charged in part as follows:

"You can readily appreciate that it would be grossly unfair, even if a party had induced another to enter into a contract by means of false statements— after the party had been so induced to enter the contract, had learned that the statements were false, it would be grossly unfair to permit the party thus learning the real truth to proceed with the contract to such a point as he deemed advisable, and then to allow him to rescind, although the other party might have become involved in very heavy obligations as a result of being permitted to carry out the contract without complaint on the part of the party who had been deceived. The law on the subject is admirably expressed by a well-known text-book writer, who says: 'If a person, after acquiring knowledge of circumstances which would justify him in rescinding a contract to which he is a party, makes any declaration or does any act which distinctly recognizes the contract as still subsisting, and as binding upon him, he will be held to have waived his right to rescind.'"

If the plaintiff, with full knowledge of the falsity of the statements which he says were made to him prior to the signing of the contract, after he discovered the facts continued to act as though no such statements had been made, and as though he expected and required defendant to live up to the terms of the contract, then certainly he cannot come into court to complain that he entered into the contract because of the fraud which his own conduct has waived. When he discovered the truth, he had a right either to rescind or to continue to perform the contract and maintain an action for damages. But he was bound to act promptly, and his election, once made, was final and conclusive. He is not permitted to play fast and loose. If he remains silent, he waives his right to rescind. Delay and vacillation are fatal. Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798. When a party desires to rescind on the ground of fraud, he must, on discovery of the facts, at once announce his intention and adhere to it. Bispham's Equity (8th Ed.) § 259. This was not done in this case.

[2] The plaintiff testified that defendant's vice president had informed him, prior to the signing of the contract, that it had a complete shipbuilding plant, fully equipped, and that it was building ships. This testimony was contradicted; and there is testimony showing that at the time the contract was signed the plaintiff had no shipyard, no buildings, and no machinery, and that plaintiff knew these facts on January 18th. There is testimony that about the middle of February the president of the defendant company exhibited to plaintiff three or four photographs indicating the buildings which were then under construction, and the progress that was being made, and that this was in response to plaintiff's question, "Well, how are you making out with your buildings?" After looking at the pictures, the testimony is that plaintiff said "he was very much pleased at the progress we had made up to that date." On February 25, 1918, he visited the plant, and spent about two hours there, and was shown the exact condition of things. No shipbuilding was going on. There was no machinery on the premises, except a hoisting engine, which had not been set up, but was in the yard, a circular saw, and a couple of other machines in crates. The plaintiff again expressed his satisfaction at the progress that had been made in the erection of the building then in process of construction, and which was up and complete at that time, and ready to receive the roof. There was no other building on the premises, save a shanty and a shed. On March 10th plaintiff again visited the shipyard with the president of the defendant, and was there for an hour and a half, and the trip was undertaken that the plaintiff might see the work of putting in the foundation for the keel blocks. On March 18th plaintiff sent up to the yards his own employé, who spent two weeks there, and reported from time to time the progress being made. The plaintiff was there again the last week in March, and again on April 4th.

On April 10, 1918, plaintiff gave notice, "in pursuance of paragraph sixth of the contract," that, "a disagreement having arisen,"

a demand for arbitration was made; and on the day following plaintiff cabled his principal in Morroco as follows:

"Steamers under twenty-five hundred tons not allowed to cross ocean Continental not equipped build steamers that size stop arranging transfer engines materials to larger company guaranteeing complete steamer twenty-five hundred tons August stop 'government will not requisition stop furnishing performance bond with penalty for excess time stop cost five hundred thousand dollars amounts paid account this steamer require sixty thousand dollars."

Prior to this cable, no claim of fraud or misrepresentation had been made; and on April 17th, when plaintiff gave to defendant a written statement setting forth the matter he desired to arbitrate and his reasons, nothing was said as to fraud or misrepresentations. It appears that between February 16th, when plaintiff discovered the truth, and April 9th, defendant, in order to carry out the contract it had made with plaintiff, entered into contracts and gave orders amounting to about $140,000. It also appears that between the above dates the plaintiff recognized the contract as in existence, making various payments of money to defendant thereunder, two payments in February, aggregating $15,400.08, and five in March, aggregating $16,479.53; and on March 12th plaintiff authorized defendant to buy galvanized wire cable for the boat at an additional cost.

It was not until April that the plaintiff began to assert that misrepresentations had been made. It was not until after he had learned that the government would not convoy vessels of the size of that contracted for that the slightest intimation was given by him that any fraud had been practiced. Then he sought to get rid of the contract, first by means of an arbitration, upon the pretense that the boat would not be constructed within the contract time, and, failing in that attempt, he put forward the claim of fraud and brought this action. The verdict of the jury in favor of defendant is decisive of the issues involved, unless some error of law was committed at the trial.

There are 16 assignments of error. Most of the errors assigned relate to the admission or exclusion of evidence, and upon the argument in this court all but 3 or 4 of them appear to have been abandoned, not being commented upon either in the brief of counsel or in oral argument.

[3] The plaintiff assigns as error the admission of the following testimony given by himself upon his cross-examination:

"Q. Before you came to this country, what was your business? (Objected to as immaterial. Objection overruled. Exception.) A. Export and import business, too.

"Q. Where were you located? A. I was located at Leipsic and Hamburg. (Objection. Exception. Motion to strike out denied. Exception.)"

It is said that counsel asked the above questions, knowing that plaintiff, although a citizen of the United States, was born in Germany, and that at the time of the trial, in the latter part of November, 1918, the feeling in this country was still bitter towards anything German. The complaint did not allege that plaintiff is a citizen. Its statement is that he is a resident, and if it appears anywhere in the testimony that he is a citizen of this country we have failed to notice

it. It is, however, so far as the merits of this case are concerned, a matter of no importance whether the plaintiff is or is not a citizen. He had resided here for a number of years. Counsel apparently thinks that the verdict was the result of the admission of this testimony. In his brief counsel for defendant has this to say:

"One of the most vivid impressions made by the war upon the mind of the public was that the Germans apparently had no regard for the truth, they seemed incapable of telling it, and they violated their word of honor as well as their contract. Whenever the truth stood in the way of the object to be accomplished, it seemed as if the Germans carelessly brushed it aside and tried to accomplish their object, regardless of the truth and all the dictates of decency. It was the popular belief that that trait was inherent in all the German born. It was the opinion of many, also, that that trait survived in spite of many years residence in this country, and in spite of the fact of the acquirement of United States citizenship. That impression was quite general among the public. The jury that tried this case came from that public. If it shared that belief, as it very probably did, it could not physically clear it out of its mind, because the impression was too recent and had been too severely imprinted."

It is usual to allow considerable latitude in the examination of a party testifying in his own behalf. The scope and extent of the cross-examination rests largely in the discretion of the trial court, whose rulings are not to be disturbed, unless some abuse of discretion is shown. A party to a civil action, who testifies in his own behalf, stands upon the same footing as any other witness in so far as the methods of examination and cross-examination are concerned. We see no reason to think that the court was in error in allowing this testimony to stand. The witness had been asked the usual questions as to his age, where he resided, what business he was engaged in, and how long he had been in the business in this country. Then followed the questions objected to. The plaintiff fails to call our attention to any rule of evidence which made it error to admit the testimony objected to; and we do not at all agree that a person of German origin, living in the United States during the war, could not obtain justice in our courts, if a jury understood that he was born in Germany.

It is said that the court erred in excluding the following testimony:

"Q. From that report you finally believed that you had been defrauded, did you not? A. I did. (Objected to. Objection sustained. Exception.)
"Mr. Fox: I move to strike out the answer.
"The Court: Motion granted."

The report referred to is an alleged report claimed to have been received by the plaintiff on April 11th, but which had not been received in evidence. The question was objected to, and the objection sustained, but it had been already answered. Counsel therefore moved to strike out the answer, and the motion was granted. To the ruling on the motion to strike out no objection was made, and no exception was taken. It seems clear to us, however, that the motion to strike out was properly granted. If the answer had been allowed to stand, the defendant, to meet it, would have been required to interrogate the witness with the view of ascertaining whether or not the alleged

report could properly create in plaintiff's mind such a belief, and in this way the plaintiff would be getting before the jury the contents of an excluded paper. Furthermore, the plaintiff's belief was not a relevant matter.

Then it is said that the court in like manner erred in granting the motion to strike out an answer to another question relating to the same excluded report:

·Q. Did you rely upon that report? A. I did.
"Mr. Fox: I object as incompetent, irrelevant, and immaterial, and move to strike out the answer. (Objection sustained. Motion granted. Exception.)"

As the report was not in evidence, and as it would have been necessary to question the witness with respect to the contents, to determine whether plaintiff's claimed reliance thereon was justified, if the answer had been allowed to stand, it was not error to grant the motion to strike out.

It appears that defendant offered in evidence, and it was admitted over the objection of the plaintiff, the following letter:

"[Letterhead Continental Shipbuilding Corporation.]
"April 22, 1918.

"Mr. G. Alfred Miller, 29 Broadway, New York City—Dear Sir: Up to the present time you have refused to live up to our agreement with you as set forth in your letter to us under date of February 20, 1918, and our letter to you dated February 21, 1918. You have refused to sign the formal contract and to make the payments due us, as contained in your letter to us dated February 20, 1918, and we now demand that you make these payments. We also now demand that you execute and deliver to us the formal contract, approved by both of us, and which has been in your possession awaiting your signature since last February, and which we now are and have at all times been ready and willing to execute.
"Yours very truly,          Continental Shipbuilding Corp.,
                            "By E. E. Day, Jr., Vice President."

The letter relates to the building of a second ship by defendant for plaintiff. It had nothing whatever to do with the ship or contract herein involved. It is said that the letter was competent and material to show that the plaintiff's demand for the return of his payments and the starting of this suit and the making for the first time the claim of fraud followed three days after the sending of the above letter, and that all these were for the purpose of forestalling action on defendant's part. The plaintiff insists that the letter was introduced for no other purpose than to put the plaintiff in a bad light of being in the habit of repudiating his contracts.

[4] In view of the fact that plaintiff had acquiesced in the admission of the letters of February 20th and 21st, making a contract for the construction of a second steamer, making no objection thereto, we are inclined to think that it was not error to admit this letter of April 22d. But, even if we were satisfied that the letter was not strictly admissible, we do not think that its admission would constitute so serious an error as to justify a reversal. In Press Pub. Co v. Monteith, 180 Fed. 356, 362, 103 C. C. A. 502, 508, this court, speaking through Judge Coxe, referred to the rule that, if error is discovered, prejudice must be presumed, even if the error be trivial, and pronounced it "archaic." It was there said:

"The more rational and enlightened view is that, in order to justify a reversal, the court must be able to conclude that the error is so substantial as to affect injuriously the appellant's rights."

The object of all litigation is to arrive at a just result. That result, in our opinion, was reached in this case.

Judgment affirmed.