## BENSON v. SULLIVAN.
### No. 4986.

Circuit Court of Appeals, Seventh Circuit.
Nov. 29, 1933.

Benjamin S. Mesirow, of Chicago, Ill. (Lloyd C. Whitman, of Chicago, Ill., of counsel), for appellant.

Otis F. Glenn, Arthur L. Schwartz, Raymond G. Real, and J. Roy Browning, all of Chicago, Ill. (Raymond G. Real, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This action was brought by R. C. Sullivan, as receiver, by appointment of the Comptroller of Currency, of the Inland-Irving National Bank of Chicago, to recover a 100 per cent. assessment by the Comptroller against appellant on 416 shares, par value $8,320, of the capital stock of the Inland-Irving National Bank of Chicago, 216 of the shares standing in appellant's name, 100 shares in the name of appellant as trustee for his son, and 100 shares in the name of his daughter, issued in April, 1931, in lieu of 100 shares, par value $100 per share, of the capital stock of the Inland Trust & Savings Bank, an Illinois corporation, owned by appellant in December, 1930, prior to an attempted consolidation of this state bank and two national banks. The cause was submitted to the court, who found for the appellee, and entered the judgment from which this appeal is taken.

Appellant was not only a stockholder, but also a director of the state bank. February 14, 1931, that bank consolidated with the Irving Park National Bank, and the Portage Park National Bank of Chicago as the national banking association subsequently known as the Inland-Irving National Bank of Chicago. This latter bank commenced business February 14, 1931, and continued until June 9, 1931, when it was closed by the Comptroller of the Currency of the United States, and appellee was appointed receiver.

Prior to the date of the consolidation of the three banks, all of which were located in Chicago, appellant, on January 19, 1931, executed written proxy authorizing the voting of his stock in favor of the proposed consolidation of the three banks, and specifically approved the proposed capital set-up of the consolidated bank.

Appellant did not forward the certificate evidencing his ownership of 100 shares of the capital stock of the Inland Trust & Savings Bank to the consolidated bank for the purpose of exchange for the stock of the new bank until April 24, 1931, when he sent a letter of transmittal to the consolidated bank, to which was attached his two certificates evidencing ownership of 100 shares of the capital stock of the Inland Trust & Savings Bank. The certificates, as above described, were issued as directed, and appellant duly receipted for the same.

The basis of exchange of stock of the Inland Trust & Savings Bank with the stock of the new bank was four and one-sixth shares of the latter for one of the former. The par value of the stock of the new bank was $20 per share. Eight-twelfths of a share was sold upon the direction of appellant.

The liability of appellant for the assessment levied against the entire 416 shares is based on section 64, title 12, USC (12 USCA § 64), which provides that the owner of stock in national banking corporations, who transfers all or any part of it within sixty days prior to suspension of the bank, shall remain liable for any stock assessment levied against the stock so transferred.

To appellee's declaration appellant filed the plea of the general issue and a number of special pleas. Demurrer was sustained to appellant's special pleas as amounting to the general issue, and it was stated by the court that under the general issue any defense set up in the special pleas, if such defense were otherwise good, might be proved.

The defense interposed upon the hearing presented the contention that the alleged consolidation of the banks was void, it involving two national banks and a state bank; that the banking laws do not permit two or more national banks to be consolidated with one or more state banks; that the Illinois statutes forbid consolidation of a national bank and a state bank; that the agreement of consolidation by its own terms was not a statutory consolidation; that the Comptroller's certificate of consolidation is not conclusive; that there was no consolidation because the Comptroller's certificate approved an illegal, attempted consolidation, and the Comptroller had no jurisdiction to approve such a consolidation.

This record clearly discloses that the defense interposed by appellant in the District Court amounted to a collateral attack upon the act of the Comptroller of the Currency in issuing the certificate of consolidation in question. This cannot be done in a proceeding of this character. Casey v. Galli,

94 U. S. 673, 24 L. Ed. 168; Bushnell v. Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. Ed. 598; Cadle v. Baker, 20 Wall. (87 U. S.) 650, 22 L. Ed. 448. Nor can a stockholder of a national bank question the legal existence of the corporation in an action by a receiver to recover superadded liability of a stockholder. Casey v. Galli, supra.

It cannot be overlooked that appellant was the owner of 100 shares of the capital stock of the state bank; that he approved the agreement for consolidation and at the instance of the state bank, of which he was a director, he, in effect, applied to the Comptroller to approve the consolidation and to issue the certificate; that he turned in his stock in the state bank and took in lieu thereof, to himself and his family 416 shares of the capital stock of the consolidated national bank; that the certificate was issued under date of February 14, 1931, and the consolidated bank continued business until June 9, 1931; that the consolidated institution was in the active banking business practically four months; that it must have done considerable business.

In the light of these facts, what Mr. Justice Swayne said in his opinion in Casey v. Galli, supra (page 680 of 94 U. S.) is particularly applicable:

"* * * Where a shareholder of a corporation is called upon to respond to a liability as such, and where a party has contracted with a corporation, and is sued upon the contract, neither is permitted to deny the existence or the legal validity of such corporation. To hold otherwise would be contrary to the plainest principles of reason and of good faith, and involve a mockery of justice. Parties must take the consequences of the position they assume. They are estopped to deny the reality of the state of things which they have made appear to exist, and upon which others have been led to rely. Sound ethics require that the apparent, in its effects and consequences, should be as if it were real, and the law properly so regards it." (Citing numerous authorities.)

A very artful argument was made by counsel for appellant to avoid the consequences of the decision of the Supreme Court in Casey v. Galli, supra. It was even suggested that when the questions were again presented to the United States Supreme Court that case would be promptly overruled and a better set of rules applicable to cases of this character promulgated. Suffice it to say that the decision in Casey v. Galli, supra, has never been reversed or modified since it was made in March, 1877, but frequently has been cited with approval by the United States Supreme court and followed as an authority by many of the inferior federal courts as well as the courts of last resort of the states.

In the view that we take of the character of this litigation it is unnecessary to pass upon the other questions raised by appellant, and the judgment will be affirmed.

Affirmed.