## B. V. EMERY & CO. v. WILKINSON.
### No. 1033.

Circuit Court of Appeals, Tenth Circuit.
July 16, 1934.

Glenn Alcorn and Robt. W. Raynolds, both of Tulsa, Okl. (W. E. Disney, of Tulsa, Okl., on the brief), for appellant.

Geo. B. Schwabe, of Tulsa, Okl., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On July 27, 1932, the Comptroller of the Currency took charge of the assets and affairs of the Producers' National Bank of Tulsa, Oklahoma, and appointed L. R. Kershaw as receiver of such bank. Thereafter Wilkinson duly succeeded Kershaw as receiver.

On August 10, 1932, the Comptroller of the Currency made an administrative order in which he found that, in order to pay the debts of the Producers' Bank, it was necessary to enforce the individual liability of its shareholders to the extent of $250,000; and in which he made an assessment upon the shareholders of such bank in that amount to be paid on or before September 17, 1932, made a demand upon each shareholder for payment of his proper share of such assessment, and directed the receiver to take all necessary proceedings to enforce it.

This is an action against Emery & Company, the owner of 55 shares of stock in the Producers' Bank, to collect that assessment.

The answer (Note 1) of Emery & Company set up: That the Producers' Bank actual-

Note 1.
The answer contained a general denial which put in issue two material facts, to-wit, the making of the assessment by the Comptroller, and the demand for its payment. In order to avoid reversal on that narrow ground and to secure a decision on the real merits of the controversy,

ly suspended business as a going concern and as a national bank at the close of business on July 14, 1930, and thereafter did not operate as a national banking association; that on such date the liabilities of the Producers' Bank, exclusive of liabilities to stockholders, were

(1) Individual deposits .... $3,025,551.11
(2) Certificates of deposit outstanding ........... 25,881.31
(3) Savings deposits ....... 680,496.98
(4) Amounts due Banks, Bankers & Trust Companies ................ 323,744.81
(5) Checks and Cashier's Checks outstanding ..... 73,281.46
(6) Bills payable and rediscounts ............... 282,763.12

$4,411,725.89;

that on July 15, 1930, the Producers' Bank and the Fourth National Bank of Tulsa entered into a contract under which the latter agreed to assume and pay such liabilities, and the Producers' Bank executed and delivered to the Fourth National Bank its note for $4,411,725.89, dated July 15, 1930, payable on demand, with interest at 6% per annum, and an assignment of all the assets of the Producers' Bank as collateral security for such note;

That on July 27, 1932, the Producers' Bank had no creditors save and except the Fourth National Bank, and that the liability to the latter arose subsequently to the time the Producers' Bank went into voluntary liquidation and by virtue of such contract;

That the Comptroller had no authority to appoint a receiver for the Producers' Bank because the only debt existing at the time of such purported appointment was the debt to the Fourth National Bank, which was not contracted in the ordinary course of banking business;

That the Producers' Bank had no authority to enter into such contract with the Fourth National Bank without the consent and approval of its stockholders, and that such contract was not ratified, confirmed, or approved by two-thirds of the stockholders of the Producers' Bank;

That the Producers' Bank fraudulently induced Emery & Company to purchase 55 shares of stock in April, 1930; that the Producers' Bank was then insolvent, its capital depleted, and its stock worthless; that such facts were well known to its officers, but notwithstanding such knowledge its officers offered its stock for sale and represented that it was worth $35 a share; that Emery & Company in purchasing such stock relied upon such representations and was deceived thereby; that the Fourth National Bank, at the time it entered into such contract on July 15, 1930, had knowledge of sufficient facts with reference to such fraud to put it on inquiry and to charge it with knowledge thereof;

That the Fourth National Bank was not a bona fide purchaser of the assets of the Producers' Bank;

That the Fourth National Bank has in its

---

the parties, with our approval, entered into a stipulation in this court, in which they stipulated that the Producers' Bank was insolvent on July 27, 1932; that the Comptroller upon investigation had so found and had appointed Kershaw as receiver of such bank; that Kershaw was duly succeeded by Wilkinson, "who has ever since been and is now the duly appointed, qualified and acting receiver of said association, appointed by the Comptroller of the Currency to liquidate said association and its assets and wind up the affairs of said association, pursuant to the laws of the United States; * * * that immediately after the assets and affairs of said association were taken in charge by the Comptroller * * * the Comptroller * * * caused a valuation of the assets and liabilities of said association to be made. * * * Whereupon it was determined by the Comptroller * * * that a deficit existed and that it would be proper and necessary to levy an assessment upon the shareholders of said association equivalent to 100% of the par value of the capital stock of said association * * * and thereupon the Comptroller * * * did on the 10th day of August, 1932 * * * make an assessment * * * upon the shareholders of * * * Producers National Bank * * * for $250,000.00, to be paid by them proratably on or before the 17th day of September, 1932, and, pursuant thereto, a demand was immediately made upon each and every one of said shareholders * * * for 100% of the par value of each and every share of the capital stock of said association held or owned by them, respectively"; and that Emery & Company has not paid such assessment; and in which they further stipulated that this cause should be considered upon this appeal as though the answer of Emery & Company had not contained such general denial.

possession sufficient assets transferred under such contract to fully satisfy the note of the Producers' Bank.

The court sustained the receiver's motion for judgment on the pleadings and entered judgment against Emery & Company for $1100, its share of such assessment.

The contract of July 15, 1930, which was pleaded in the answer and set out as an exhibit thereto, recites that the board of directors and shareholders owning more than two-thirds of the capital stock of the Producers' Bank have authorized the appropriate officers of the Producers' Bank to enter into and execute such agreement, and provides that the Producers' Bank "shall, immediately after the execution and delivery of this agreement, cause a meeting of its shareholders to be held in the manner and pursuant to the notice prescribed by law and for the purpose of placing First Party (Producers Bank) in liquidation and for naming a liquidating agent or committee."

We think it is reasonable to assume, from the allegations of the answer and the provisions of the contract last adverted to, that while the Producers' Bank actually suspended business at the close of business on July 14, 1930, it did not legally go into liquidation, in accordance with 12 USCA, Sections 181-2, until after the execution of such contract.

The acts of the Comptroller in finding the insolvency of the bank, appointing a receiver therefor, finding the necessity for an assessment, and ordering such assessment, were quasi judicial in character and are not subject to collateral attack. They may only be avoided by a court in a direct proceeding for clear error of law, fraud, or mistake. Deweese v. Smith (C. C. A. 8) 106 F. 438, 445, 66 L. R. A. 971; Schram v. Schwartz (C. C. A. 2) 68 F.(2d) 699; Miller v. Stock (C. C. A. 3) 65 F.(2d) 773, 90 A. L. R. 1061; Crawford v. Gamble (C. C. A. 6) 57 F.(2d) 15; Wannamaker v. Edisto Nat. Bank (C. C. A. 4) 62 F.(2d) 696, 700; Chase v. Hall

(C. C. A. 9) 30 F.(2d) 195, 196, 197; Collins v. Caldwell (C. C. A. 5) 29 F.(2d) 329; Liberty Nat. Bank v. McIntosh (C. C. A. 4) 16 F.(2d) 906, 909; Benson v. Sullivan (C. C. A. 7) 67 F.(2d) 708; Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476; Weitzel v. Brown, 224 Mass. 190, 112 N. E. 945.

In Kennedy v. Gibson, 8 Wall. 498, 505, 19 L. Ed. 476, the court said:

"The receiver is the instrument of the comptroller. * * * It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him."

It follows that Emery & Company may not here challenge the existence of facts requisite to authorize the Comptroller to appoint a receiver for the Producers' Bank under 12 USCA § 191 (Note 2), and to make an assessment against the individual shareholders of such bank under 12 USCA §§ 64 and 192 (Note 3). Crawford v. Gamble (C. C. A. 6) 57 F.(2d) 15, 16.

But if Emery & Company could challenge the validity of the contract of July 15, 1930, in this action, it would be confronted with respectable authority sustaining its validity.

Under that contract the Fourth National Bank advanced the monies to pay the liability of the Producers' Bank, and the latter obligated itself to repay the monies so advanced, and pledged its assets to secure such repayment. By such transaction the Producers' Bank merely substituted one creditor for many. Wyman v. Wallace, 201 U. S. 230, 242-244, 26 S. Ct. 495, 50 L. Ed. 738; Hightower v. American Nat. Bank, 263 U.

Note 2.

Section 191, supra, in part reads as follows:

"Whenever the comptroller shall become satisfied of the insolvency of a national banking association, he may, after due examination of its affairs, in either case, appoint a receiver who shall proceed to close up such association, and enforce the personal liability of the shareholders, as provided in section 192."

Note 3.

Section 64, supra, in part provides:

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock."

Section 192, supra, in part reads as follows:

"Such receiver * * * may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders."

S. 351, 44 S. Ct. 123, 68 L. Ed. 334; Scott v. Norton Hardware Co. (C. C. A. 4) 54 F. (2d) 1047.

It has been held that the officers of a bank in a failing condition have authority to enter into such a contract on its behalf [Chase v. Hall (C. C. A. 9) 30 F.(2d) 195, 197; Wyman v. Wallace, supra; Hightower v. American Nat. Bank, supra; Derscheid v. Andrew (C. C. A. 8) 34 F.(2d) 884]; even without formal authorization by its stockholders. City Nat. Bank of Huron v. Fuller (C. C. A. 8) 52 F.(2d) 870, 872, 873, 79 A. L. R. 71; Wannamaker v. Edisto Nat. Bank (C. C. A. 4) 62 F.(2d) 696, 699, 700.

■ The fact that Emery & Company was induced to purchase stock in the Producers' Bank through the fraud of its officers or directors, is not available as a defense in this action at law to which the Producers' Bank is not a party, and to enforce an assessment made by the Comptroller against Emery & Company as a shareholder. Lantry v. Wallace, 182 U. S. 536, 547-550, 21 S. Ct. 878, 882, 45 L. Ed. 1218. Note 4.

■ Assuming, as we must, that Emery & Company was induced to purchase the shares in the Producers' Bank through the fraud of its officers, and that the Fourth National Bank is charged with knowledge thereof, such fraud did not render the transfer of the stock to Emery & Company void, but merely voidable. Note 5. The fraud was in the inducement, not in the execution of the contract of sale.

In Whipple v. Brown Bros. Co., 225 N. Y. 237, 121 N. E. 748, 749, the court said:

"Fraud in the factum renders the writing void at law, whereas fraud in the treaty renders it voidable merely."

■ Hence, as long as the contract of sale remained unrescinded, the status of Emery & Company as a stockholder, and its consequent liability for assessment, continued. As between itself and the Producers' Bank, it could have elected to affirm the transaction and sue at law for damages, or to avoid the transaction and sue in equity for rescission. Paris v. Smith (C. C. A. 2) 270 F. 65, 67; Burnes v. Burnes (C. C. A. 8) 137 F. 781, 800; Simon v. Goodyear Metallic Rubber S. Co. (C. C. A. 6) 105 F. 573, 579, 52 L. R. A.

Note 4.

In Lantry v. Wallace, supra, the court said:

"The present action is beyond question one at law. Its object is to enforce a liability created by statute for the benefit of creditors who have demands against the bank of which the plaintiff is receiver. The defendant stood upon the books of the bank as a shareholder at the time it was placed in the hands of the receiver and he was accorded the privileges appertaining to that position. He claims exemption from the responsibility attaching to him, under the statute, as a shareholder, upon the ground that in consequence of the frauds practiced upon him he was entitled to disaffirm, and that he had upon due notice to the receiver disaffirmed, the contract under which he purchased the stock in question. He seeks to have the certificate received by him treated as canceled. Clearly such a defense is of an equitable nature, and could not be recognized and sustained except in some proceeding to which the bank, at least, was a party. If the defendant was entitled, under the facts stated, to a rescission of his contract of purchase, and to a cancellation of his stock certificate, and consequently to be relieved from all responsibility as a shareholder of the bank, he could obtain such a relief only by a suit in equity to which the bank and the receiver were parties. * * *

"We must not be understood as expressing any opinion upon the question whether the defendant could have been discharged from liability as a shareholder if the facts stated in his answer by way of defense had been established in a separate suit in equity. Whether a decree based upon the facts set forth in the answer, even if established in a suit in equity, brought against the bank and the receiver after the appointment of a receiver, would be consistent with sound principle or with the statute regulating the affairs of national banks and securing the rights of creditors, is a question upon which we do not now express an opinion. We mean at this time only to adjudge that the facts set forth in the answer present grounds of relief which cannot be made available by way of defense in this action at law, and if sufficient to protect the defendant against the liability attaching to him as a shareholder, must be alleged and proved in a suit in equity to which the bank and the receiver are made parties."

Note 5.

Williston on Contracts, Vol. III, Sec. 1488; Whipple v. Brown Bros. Co., supra; Security Finance Co. v. Mills, 195 N. C. 337, 142 S. E. 26; Beebe v. James, 91 Mont. 403, 8 P.(2d) 803, 807; Colby v. Daniels, 125 Okl. 202, 257 P. 298, 301; In re Opinion of the Justices, 251 Mass. 569, 147 N. E. 681, 699; Lowery v. Mutual Loan Soc., 202 Ala. 51, 79 So. 389.

745; Fenemore v. United States, 3 Dall. 357, 363, 1 L. Ed. 634; Wyatt v. Madden, 59 App. D. C. 38, 32 F.(2d) 838; Miller v. Continental Shipbuilding Corp. (C. C. A. 2) 265 F. 158, 161; Martinson v. Hamil, 132 Okl. 70, 269 P. 255; Holcomb & Hoke Mfg. Co. v. Jones, 102 Okl. 175, 228 P. 968.

■ But to have avoided the relation of stockholder, Emery & Company must have made its election promptly on discovery of the fraud (Note 6); and proceeded in equity for rescission. Lantry v. Wallace, supra.

Whether it could have made the banks parties and set up an equitable counter-claim for rescission in the instant action, under 28 USCA § 398, long after it had discovered the fraud (See cases Note 6), when the Fourth National Bank advanced funds to pay cred-itors, to satisfy whose debts Emery & Company would have clearly been liable for an assessment despite such fraud (Note 7), we need not decide. Emery & Company has not undertaken to do so. The answer does not even allege an election to rescind on account of fraud.

We conclude that Emery & Company may not in this proceeding collaterally attack the validity of the Comptroller's acts in appointing a receiver and in making an assessment upon the shareholders, and that the alleged fraud was not available as a defense here.

It follows that the allegations of the answer, not withdrawn by the stipulation (See Note 1), constitute no defense to the action.

The judgment is therefore affirmed.

Note 6.
See Burnes v. Burnes (C. C. A. 8) 137 F. 781, 800; Miller v. Continental Shipbuilding Corp. (C. C. A. 2) 265 F. 158, 161; Ripley v. Jackson Zinc & Lead Co. (C. C. A. 8) 221 F. 209; Blank v. Aronson (C. C. A.) 187 F. 241, 245; Harwood v. U. S. Shipping Board (C. C. A. 2) 32 F.(2d) 680.
In Burnes v. Burnes, supra, the court said:
"The law gives one who is induced by fraud to make a contract the option to rescind it. But it imposes upon him the duty to exercise that option with all convenient speed after his discovery of the fraud. He may not speculate upon it. He may not lie in wait until time and change make his interest plain, and then make his choice. Silence, delay, acquiescence, or the retention of the fruits of the agreement for any considerable length of time after the discovery of the fraud, constitutes a complete and irrevocable ratification of the transaction."
Note 7.
Anderson v. Cronkleton (C. C. A. 8) 32 F.(2d) 170; Williams v. Stone (C. C. A. 4) 25 F.(2d) 831; Scott v. Deweese, 181 U. S. 202, 213, 21 S. Ct. 585, 45 L. Ed. 822; Ryan v. Mt. Vernon Nat. Bank (C. C. A. 2) 224 F. 429.