## TRUSTEES OF SOMERSET ACADEMY v. PICHER.
### No. 3226.

Circuit Court of Appeals, First Circuit.
June 16, 1937.

Harvey D. Eaton, of Waterville, Me., for appellants.

F. Harold Dubord, of Waterville, Me., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal in equity from a decree of the District Court of Maine dismissing the plaintiff's bill.

The plaintiffs on August 3, 1931, were the owners of seven shares of the Ticonic National Bank located in Waterville, Me., hereinafter referred to as the Ticonic Bank. On said third day of August, the Ticonic Bank having certain loans that could not properly be realized upon, and having suffered depreciation in its bond and investment accounts to the extent that its surplus and undivided profits had been dissipated and its capital impaired, the Treasury Department of the United States insisted that action must be taken to improve its financial status or it would be obliged to close and liquidate the bank.

Under these conditions on August 3, 1931, it entered into an agreement with the Peoples National Bank of Waterville, hereinafter referred to as the Peoples Bank, whereby all its depositors would be paid in full and its liabilities assumed by the Peoples Bank. In consideration of the Peoples Bank assuming the liabilities of the Ticonic Bank, it agreed to transfer to the Peoples Bank all its stocks and bonds, cash, capital stock in the Federal Reserve Bank, its banking house, furniture, fixtures and supplies, and all bonds, stocks and securities, not including other real estate or customers' notes and certain bonds and stocks of uncertain value and of slow collection and listed in a certain schedule designated as "Schedule F" in the agreement with its stockholders.

The Ticonic Bank also agreed to give to the Peoples Bank its note for approximately $700,000, representing a deficiency between what was considered the value of its sound assets and its liabilities, and transferred the securities listed in said Schedule F as security therefor. A committee was created to turn such securities into cash on as favorable terms as possible and cred-

it the proceeds on the note; and, in case a sufficient sum was not realized from the securities to pay the note, the Ticonic Bank should remain liable for the balance, and it was agreed that all statutory liability to assessment on the part of any stockholder of the Ticonic Bank was expressly retained and kept alive for the purpose of satisfying any balance due.

Jurisdiction in these proceedings is claimed by reason of the action being brought against a national bank receiver and in equity to avoid a multiplicity of suits. The prayer in the original bill is that the receiver be enjoined from prosecuting any suit to collect assessments against the stockholders of the Ticonic Bank.

On October 2, 1934, after the liquidation of the Ticonic Bank had been progressing for three years and the appointment of a receiver by the Comptroller, the Comptroller, following an examination of the affairs of the Bank, issued the following order and assessment of the shareholders of the Ticonic Bank:

"Whereas, upon a proper accounting by the Receiver heretofore appointed to collect the assets of 'The Ticonic National Bank of Waterville, Maine,' and upon a valuation of the uncollected assets remaining in his hands, it appears to my satisfaction that in order to pay the debts of such association it is necessary to enforce the individual liability of the stockholders therefor to the extent hereinafter mentioned, as prescribed by sections 5151 and 5234 of the Revised Statutes of the United States (12 U.S.C.A. §§ 63, 192 and notes), Section 1, c. 156, Act of June 30, 1876 (12 U.S.C.A. § 191) and Section 23, Act approved December 23, 1913, known as Federal Reserve Act (12 U.S.C.A. § 64).

"Now, therefore, by virtue of the authority vested in me by law, I do hereby make an assessment and requisition upon the shareholders of the said 'The Ticonic National Bank of Waterville,' for Two Hundred Thousand ($200,000) Dollars, to be paid by them on or before the 9th day of November, 1934, and I hereby make demand upon each and every one of them for the par value of each and every share of the capital stock of said association held or owned by them, respectively, at the time of its failure; and I hereby direct Arthur G. Picher the Receiver heretofore appointed, to take all necessary proceedings, by suit or otherwise, to enforce to that extent

the said individual liability of the said shareholders."

The action of the receiver to collect the assessments thus made precipitated these proceedings.

On October 21, 1936, the plaintiffs were allowed to amend the prayer to their bill by adding the following: "That the Comptroller's finding of October 2, 1934, be declared null and void."

Following the decree of the District Court the plaintiffs assigned as errors:

(1) Because the court found the evidence referred to in the decree inadmissible as immaterial to the issue.

(2) Because the court found that the order of the Comptroller referred to in its decree could not be attacked in any litigation between the receiver and a stockholder.

(3) Because the court found that the action of the Comptroller in laying assessment on stockholders of an insolvent national bank is a quasi-judicial proceeding and not subject to judicial review.

(4) Because the court found upon the whole case that plaintiff's bill should be dismissed.

The evidence referred to in assignment 1 is held to be irrelevant and immaterial. Only errors 2 and 3 need consideration.

■ That the making of the assessment is entrusted to the Comptroller, and that his action cannot be attacked collaterally, has been uniformly held by the courts, following Kennedy v. Gibson et al., 8 Wall. 498, 505, 19 L.Ed. 476, where it is said: "It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him." In Deweese v. Smith et al. (C.C.A.8) 106 F. 438, 445, 66 L.R.A. 971, affirmed in Smith v. Brown, 187 U.S. 637, 23 S.Ct. 845, 47 L.Ed. 344, it is said: "But this question is not open to litigation in this case."

Also see Wannamaker v. Edisto National Bank of Orangeburg (C.C.A.) 62 F.(2d) 696; Schram v. Schwartz (C.C.A.) 68 F. (2d) 699, 701.

It is admitted by the plaintiffs that the findings and judgment of the Comptroller are not subject to review and cannot be attacked collaterally on any ground. The cases hold that, even if attacked directly, it can only be done on the ground of mistake or fraud on the part of the Comptroller, of which there is no allegation in the complaint.

In Liberty National Bank of South Carolina et al. v. McIntosh (C.C.A.) 16 F. (2d) 906, 909, the court said:

"The decisions of the Comptroller of the Currency are not subject to collateral attack, nor is his assessment against shareholders, and the amount thereof open to review; but, on the contrary, neither the bank nor the shareholders, clearly in the absence of fraud charged and proved, are entitled to a judicial determination of any question involved in his decision either as to the solvency, the sum due creditors and the amount of assessments as ordered, such matters one and all being exclusively within the judgment and discretion of the Comptroller, and as to which he acts in a quasi judicial capacity."

In Meeker v. Baxter et al. (C.C.A.) 83 F.(2d) 183, 186, the court said:

"It has indeed been said that it [a judgment of the comptroller] may be impeached for 'fraud' or 'illegality'; and while it is not very clear just what these words mean, we may assume arguendo that if the Comptroller were consciously to assess shareholders in sums which he did not believe to be true, they could show it and escape; perhaps the same may be true if he proceeded in the face of a statute. But his assessment cannot be attacked by showing that the debts were in fact smaller or the assets larger than he took them to be, or that the directors had misconducted themselves or acted without the knowledge of the shareholders, or defrauded them. Fraud must at least mean fraud of the Comptroller in making the assessment, and the defence does not so allege."

■ It cannot be maintained that the plaintiffs' complaint is a direct attack on the Comptroller's action. To constitute a direct attack upon a judgment of the Comptroller there must be allegations of fraud on his part or a lack of power to act in the premises. A stockholder of a national bank cannot attack his findings on

the ground of a lack of evidence unless there actually appears error of law or mistake on which the Comptroller based his judgment. B. V. Emery & Co. v. Wilkinson (C.C.A.) 72 F.(2d) 10. See Meeker v. Baxter et al., supra.

Also, see, 34 C.J. 520; Words and Phrases, First Series, vol. 2, p. 1250; Words and Phrases, Second Series, vol. 1, p. 754.

"A collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it; any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree; an objection, incidentally raised in the course of the proceeding, which presents an issue collateral to the issues made by the pleadings. In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral." 34 C.J. p. 521.

"An attack upon a judgment is collateral if the action or proceeding has an independent purpose and contemplates some other relief and result than the mere setting aside of the judgment, although the setting aside of the judgment may be necessary to secure such independent purpose." 15 R.C.L. 838.

See definitions under title, Collateral Attack, vol. 2, Words and Phrases, First Series, p. 1249.

In Hays v. Wilkinson (C.C.A.) 72 F.(2d) 201, 203, the court held that allegations of coercion, collusion, and fraud in the execution of a contract for the assumption of an insolvent bank's liabilities by another bank in consideration of the former's execution of a note secured by a pledge of its assets to the other bank, did not constitute a defense to an action by the insolvent bank's receiver for a stock assessment being a collateral attack on the assessment. A stockholder of a national bank sued for an asssessment cannot defend on the ground that officers and agents of the bank have been guilty of fraudulent and unlawful practices, since when the stock-holder subscribed for his stock the law wrote into the contract that the Comptroller should decide on the necessity for and the amount of assessments, and that when they were so determined the stockholder would respond in payment, thereby precluding the stockholder from nullifying his obligation on collateral considerations. An examination of the cases has made it clear that the appellant is not entitled to judicial ascertainment of whether the $647,000 note was a valid obligation, to satisfy which an assessment might be made, as this would amount to a collateral attack upon an assessment already made by the Comptroller. Crawford v. Gamble (C. C.A.) 57 F.(2d) 15, 16.

The cases cited by the plaintiffs' counsel in Bogan v. Edinburgh American Land Mortgage Co. (C.C.A.) 63 F. 192, and United States v. Winona & St. P. R. Co. (C.C.A.) 67 F. 948, to the effect that actions brought against the party claiming under judgment of land commissioner are direct attacks upon his judgment and are not in point. Either there was no authority for the commissioner to act in the premises or the case involved a sale of land under the Homestead Act by the United States.

Plaintiffs' counsel relies on the allegation that the Comptroller's decision was based on the note given by the Ticonic Bank to the Peoples Bank, as a basis for his order of assessment. The evidence does not sustain the allegation. There is no evidence that the Comptroller was not fully acquainted with the condition of the Ticonic Bank at the time of his appointment of a receiver and his order of assessment. On the contrary, there had been an investigation of the affairs of the Ticonic Bank by an accountant for the Comptroller.

Counsel also lays stress on the fact that the note given was in excess of the capital stock of the bank, but the note was not given to create a new debt, but was simply an acknowledgment of a deficiency found to exist between its sound assets and liabilities, with a pledge of certain doubtful assets to secure the payment, the proceeds thereof to be credited on the note. Richter et al. v. Laredo National Bank (C. C.A.) 62 F.(2d) 289.

The giving of this note, therefore, was not a violation of section 82 of title 12 of U.S.C.A. It was, in effect, nothing more

than an acknowledgment of a deficiency of sound assets in respect to liabilities, a practice frequently adopted in the taking over by one bank of another. In other words, it was the substitution of one creditor for many. Hightower et al. v. American National Bank, 263 U.S. 351, 360, 44 S.Ct. 123, 126, 68 L.Ed. 334; Wyman v. Wallace, 201 U.S. 230, 243, 26 S.Ct. 495, 50 L. Ed. 738; Derscheid et al. v. Andrew (C. C.A.) 34 F.(2d) 884, 888; Wannamaker v. Edisto National Bank, supra.

If the Peoples Bank had not paid all its debts and the depositors of the Ticonic Bank, the Ticonic Bank would have been liable to the individual depositors who did not receive the full amount of their deposits. By the Peoples Bank guaranteeing the depositors of the Ticonic Bank the full amount of their deposits, the note to the Peoples Bank was merely a substitution of the Peoples Bank as debtor for the several depositors of the Ticonic Bank. The Ticonic Bank had already contracted indebtedness represented by the deficiency less such sums as might be realized from the assets pledged in payment of the note.

█ The validity of the note is no defense in these proceedings. Such a note is not an unusual practice in case of one bank taking over the questionable assets of another bank in liquidation; nor is the alleged failure to give the requisite notices of the stockholders' meetings in accordance with section 33 of 12 U.S.C.A. a defense. There is no evidence that the meetings of the stockholders were not called in accordance with the by-laws of the two banks. In any event, the Comptroller in 1934 found from an examination of the affairs of the Ticonic Bank that it was in an insolvent condition, from whatever cause is immaterial. He proceeded to appoint a receiver to take possession of the assets it had, and found it necessary to order an assessment on its stockholders. No fraud is alleged, or mistake of law or fact is shown on his part. His action cannot be questioned in these proceedings.

It cannot be said in defense that this indebtedness, for which the note was given as evidence, was incurred in the process of liquidation. It had been contracted prior to the sale of the assets in August, 1931. Scott et al. v. Norton Hardware Co. et al. (C.C.A.) 54 F.(2d) 1047, 1050; Hightower et al. v. American National Bank, supra.

We express no opinion on whether the actions at law can be maintained.

The decree of the District Court is affirmed, with costs to the appellee.